******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANIBAL BOBE
(AC 39781)

Alvord, Bright and Sullivan, Js.

*Syllabus*

Convicted of the crime of sexual assault in the second degree and two
counts of the crime of risk of injury to a child, the defendant appealed
to this court. The defendant's conviction stemmed from his alleged
sexual abuse of the minor victim, who had resided for a short period
of time in the defendant's apartment with his siblings and his mother.
At trial, over the defendant's objection, the victim testified regarding
what his mother had told him the defendant said about why the family
was asked to move out of the apartment. On appeal, the defendant
claimed that the trial court improperly admitted his alleged out-of-court
statement to the victim's mother through the testimony of the victim.
*Held* that the defendant failed to demonstrate that any claimed error in
the admission of the challenged statement was harmful, he having failed
to demonstrate that the jury's verdict was substantially swayed by the
claimed error: the state's case against the defendant was strong in that
the jury heard a detailed description of the defendant's conduct from
the victim, whose testimony was corroborated by his stepbrother's con-
stancy of accusation testimony, the challenged testimony consisted of
one question and one short answer, and the prosecutor referred to the
challenged statement only once in her closing argument and did not
use the statement for its truth or to disparage the defendant; moreover,
to the extent that the challenged statement had any impact on the jury,
it was inconsistent with the testimony of another witness regarding the
reason that the victim's family had to leave the apartment and, therefore,
would have undermined, rather than bolstered, the victim's credibility.

Argued November 28, 2017—officially released February 27, 2018

*Procedural History*

Substitute information charging the defendant with
the crime of sexual assault in the second degree and
two counts of the crime of risk of injury to a child,
brought to the Superior Court in the judicial district of
Fairfield and tried to the jury before the court, *Kahn,
J.*; verdict and judgment of guilty, from which the defen-
dant appealed to this court. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant
(defendant).

*Sarah Hanna*, assistant state's attorney, with whom,
on the brief, were *John C. Smriga*, state's attorney, and
*Ann P. Lawlor*, senior assistant state's attorney, for the
appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Anibal Bobe, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and of injury to a child in violation of General Statutes § 53-21 (a) (1), and risk of injury to a child in violation of § 53-21 (a) (2). On appeal, the defendant claims that the trial court improperly admitted into evidence hearsay and double hearsay through the testimony of the victim.[1] We conclude that any claimed error was harmless and, accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. In July, 2012, the male victim, then fourteen years old, and his family were homeless. The victim's mother was acquainted with the defendant, who allowed them to live in his one bedroom apartment with him. The defendant helped his landlord with building maintenance and had access to the building's attic and vacant apartments in the building that required work. The defendant asked the victim's mother if the victim could help him paint a neighboring vacant apartment. That apartment had painting mats down on the floor. The defendant provided the victim with a brown bottle of liquor that the victim described as "[tasting] horrible."[2] The defendant and the victim took off each other's clothes. The victim put his mouth on the defendant's penis and performed oral sex until the defendant ejaculated on the floor, and the defendant did the same to the victim.

On another occasion, the defendant invited the victim to come up to the attic, where there was a bed, to have "sweaty sex." The victim went into the attic with the defendant, and they took off each other's clothes and performed oral sex on each other. The defendant "put the tip of his [penis] in [the victim's anus], but it didn't go all the way in because [the victim] . . . clenched up . . . and . . . [pushed] away because it . . . [hurt]." Another time in the vacant apartment, the defendant asked the victim to "turn over so that he [could] stick it in." The victim did not want to engage in anal sex, but the defendant told him that "[it was] ok" and fully penetrated the victim's anus. The victim described it as a "painful," "awful feeling." The victim stated that when the defendant finished it felt like the defendant had "[ejaculated] inside [of him]." The defendant never used a condom during any of the assaults. Afterward, the victim went to the bathroom and saw blood in his underwear. The victim told the defendant, but the defendant "tried to deny it and say that . . . it wasn't blood." The victim was scared, and he threw away the bloody underwear.

The victim engaged in oral sex with the defendant approximately two other times, and the defendant

attempted to engage in anal sex with the victim on one other occasion. The defendant told the victim multiple times "not to tell anyone because [they] would both get in trouble." Initially, the victim did not tell anyone about the assaults because he "was scared and . . . [did not] know what was going to happen" or "what anybody would think." The victim was "very concerned" about whether his family would be able to stay in the defendant's apartment. Later that month, the landlord discovered that the victim's family was living in the defendant's apartment and asked them to leave. In the spring of 2013, the victim told his stepbrother the defendant's name and "exactly what happened from the beginning . . . to the end." The victim then told his father and stepmother, who contacted the Bridgeport Police Department.

The state subsequently charged the defendant with sexual assault in the second degree, and two counts of risk of injury to a child. A three day jury trial commenced on July 6, 2016, at which the victim testified. The victim's testimony was corroborated by his stepbrother's constancy of accusation testimony. During the state's direct examination of the victim, the following exchange occurred:

"[The Prosecutor]: [W]ith respect to your birthday and the time you moved out of [the defendant's] apartment, can you tell us about that?

"[The Victim]: He kicked us out a few days before my birthday. And my mom told me the reason he kicked us out—

"[Defense Counsel]: Objection. It's hearsay.

"The Court: Sustained as to hearsay. You can tell us—I'll permit—well, actually I'm going to overrule the objection because it's the defendant's statement. So it's a statement against penal interest. So under that. . . . [Y]ou may—you may say what the defendant told you or told your mom.

"And it's not to be admitted for the truth of the matter asserted. So to the extent it's double hearsay, I'll overrule it on that basis. I'm sorry. The question is what the defendant told [the victim's] mother why he was—why they were being kicked out. . . .

"[The Prosecutor]: Yes.

"The Court: Ok. . . . I'll permit that.

"[The Prosecutor]: What, if anything, did [the defendant] tell your mother or you about why you were getting kicked out?

"[The Victim]: [The defendant] told my mom we were getting kicked out because he wanted to jerk off in peace."

On July 8, 2016, the jury returned a verdict of guilty as to all charges and, thereafter, the defendant was

convicted and sentenced to a total effective sentence of thirty-five years of incarceration, execution suspended after seventeen years, followed by thirty years of probation. This appeal followed.

On appeal, the defendant generally argues that the trial court improperly admitted hearsay and double hearsay evidence by permitting the victim to testify about what his mother told him the defendant said. The state argues that because the testimony was not admitted for the truth of the matter asserted, it was properly admitted as nonhearsay. The state further argues that the defendant's claim is not preserved because once his hearsay objection was overruled, he did not object to the testimony on any other basis. We conclude that, even assuming, arguendo, that the admission of the testimony was improper, it was not harmful because the evidence did not substantially affect the verdict in this case.

We turn to the standard of review and legal principles that guide our review of the defendant's claim. "[T]o the extent that we assume impropriety in the trial court's evidentiary [rulings], [w]hen an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [the improper admission of a witness' testimony] is harm[ful] in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harm[ful] should be whether the jury's verdict was substantially swayed by the error." (Internal quotation marks omitted.) *State* v. *Paul B.*, 315 Conn. 19, 30–31, 105 A.3d 130 (2014). "Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Toro*, 172 Conn. App. 810, 817, 162 A.3d 63, cert. denied, 327 Conn. 905, 170 A.3d 2 (2017).

We conclude that the defendant has not demonstrated that any claimed error was harmful. The state presented a strong case against the defendant. The jury heard a detailed description of the defendant's conduct from the victim, whose testimony was corroborated by his stepbrother's constancy of accusation testimony. Additionally, the challenged testimony consisted of one question and one short answer. The prosecutor referred to the statement only once in her closing argument and did not use the statement for its truth or to disparage the defendant, but only referenced that the "information

was shared" with the victim.[3] Moreover, the challenged testimony was inconsistent with the landlord's testimony, in which she stated that *she told* the defendant that the victim's family had to leave the apartment. The state highlighted the landlord's testimony in its closing argument.[4] Accordingly, to the extent that the challenged testimony had any impact on the jury's verdict, it would have undermined, rather than bolstered, the victim's credibility. In light of this, and, recognizing the strength of the state's case and the insignificance of the challenged testimony, we conclude that, even if we assume that the victim's testimony as to the challenged statements improperly was admitted, the defendant has not demonstrated that its admission was harmful.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity can be ascertained. See General Statutes § 54-86e.

[2] The defendant provided the victim with alcohol on two other occasions.

[3] The prosecutor, in her closing argument, stated: "So [the victim] tells us he's living in an apartment . . . for about a month and he knows that they got kicked out a few days before his birthday. He doesn't tell his mother. He describes how he was feeling scared and worried. He does testify to that. And how he was worried that they would get kicked out of the apartment. This is a kid that's homeless. And I would submit to you that at no time did he testify or was there any evidence presented that he would be safe and secure if he lived with his father. He's [a] fourteen year old kid. . . . He's with his mother and two younger siblings. And when they do get kicked out for whatever reason, his mother tells him, according to [the victim's] testimony, they got kicked out of the apartment because the defendant wants to jerk off in peace. For better or for worse, that information was shared with [the victim] because he told us."

[4] The prosecutor, in her closing argument, also stated: "[The defendant] knows that they are homeless because they're living with him. They're in the apartment with him. They're not supposed to be there. The [landlord] told us that. That's why she told [the defendant] that they had to leave."