# DONANOVA M. FOSTER *v.* TIMOTHY W. FOSTER, JR., ET AL.
## (AC 23868)

Flynn, Bishop and DiPentima, Js.

312

Submitted on briefs April 2—officially released August 3, 2004

*Conrad Ost Seifert,* filed a brief for the appellant (plaintiff).

*Opinion*

BISHOP, J. In this action to modify the award of child support issued in a Rhode Island dissolution action, the plaintiff, Donanova M. Foster, appeals from the orders of the trial court rendered after the dissolution of her marriage to the named defendant, Timothy W. Foster, Jr.[1] On appeal, she claims that the court improperly (1) denied her motion for a continuance, (2) refused to reinstate the defendant's child support obligations, (3) ordered postjudgment therapy for her and her minor child, (4) awarded the nonprevailing parties $16,000 in attorney's fees and (5) incarcerated the plaintiff. We reverse in part and affirm in part the judgments of the trial court.

The following facts and procedural history are relevant to the issues on appeal. When the plaintiff and the defendant were divorced in Rhode Island on January 21, 1992, the plaintiff was awarded sole custody of their minor child. The defendant, who did not appear in court at the time of the dissolution, was denied visitation. The Rhode Island divorce decree subsequently was vacated, and the parties entered into a consent decree in Rhode Island that provided for the plaintiff to retain custody of the child and the defendant to be awarded reasonable visitation rights supervised by the paternal grandmother, Gail Foster. The paternal grandparents, Gail Foster and Timothy W. Foster, Sr., also were awarded visitation on specific dates and times.

---

[1] The paternal grandparents, Gail Foster and Timothy W. Foster, Sr., also are defendants. In this opinion we refer to Timothy W. Foster, Jr., as the defendant and to Gail Foster and Timothy W. Foster, Sr., as the grandparents.

The plaintiff later left the jurisdiction of Rhode Island, moving to Connecticut with the child. With the assistance of a private detective, the grandparents eventually located the plaintiff and the child in Connecticut, and in September, 1999, they brought an action in the Superior Court to enforce their visitation rights with the child. Although, the court, *Martin, J.*, ordered that the child call her grandparents every Sunday, they received only two of the twenty ordered telephone calls. In March, 2000, the parties entered into an agreement that provided for the grandparents to have visitation every third Sunday. Beginning in March, 2000, various orders were entered by the court, with which the plaintiff rarely complied. In fact, the plaintiff often interfered with the enforcement of the court's orders regarding visitation with the minor child.

In October, 2001, the plaintiff filed a motion to terminate the grandparents' visitation rights and to reinstate child support, which previously had been suspended pursuant to a Rhode Island court order. In May, 2002, the defendant and the grandparents filed motions to modify custody or, in the alternative, to enforce their visitation rights. Those motions, which are implicated in this appeal, were heard by the court in December, 2002.

At the hearing, both the plaintiff and the grandmother testified as to the visitation between the child and the grandparents. Their testimony established that the visitation was fraught with problems and that each party blamed the other for difficulties associated with the grandparents' attempts to visit with the child. Evidence adduced at the hearing indicated that the last time the grandparents had visited was in June, 2001, at which time the police were called to resolve an altercation between the plaintiff and the grandmother. Despite an extant court order, no further visitation occurred between the child and her grandparents. It was also established at trial that the defendant and the child

have had little contact throughout her life and that the last time the defendant had seen her was approximately five years earlier.

On January 14, 2003, the court denied the motions by the defendant and the grandparents to modify custody, concluding that it was in the best interest of the child to remain with the plaintiff. Although the court also denied visitation to the grandparents and the defendant, the court did create a schedule for the child to have written contact with them.[2] As a result of the plaintiff's conduct, the court also ordered that the defendant would have no obligation to pay child support to the plaintiff until such time as a reunification between the child and the defendant occurred. The court also ordered the plaintiff and the child to attend weekly individual therapy sessions. Last, the court ordered the plaintiff to pay one half of the attorney's fees of the defendant and the grandparents. This appeal followed.

I

The plaintiff first claims that the court violated her rights to procedural due process when it denied her motion for a continuance. We do not agree.

The following additional facts are relevant to the resolution of that issue. On September 16, 2002, Adam Laben, the attorney then representing the plaintiff, filed a motion to withdraw as counsel, citing an irreparable breakdown of the attorney-client relationship. Notice was given to the plaintiff, and a hearing was held on September 30, 2002, when, without objection from the plaintiff, the court granted Laben's motion to withdraw. The court further ordered the plaintiff to enter an appearance pro se pending her retention of substitute counsel. The court reiterated its previous trial management order that the trial was to begin as scheduled on

---

[2] The custody and visitation orders have not been appealed from.

December 16, 2002, regardless of whether the plaintiff had secured new legal representation by that date. Nevertheless, on December 4, 2002, the plaintiff filed a motion for a continuance on the basis of her stated need for representation. On December 6, 2002, at the hearing on the plaintiff's motion for a continuance, the plaintiff represented that she had retained an attorney, Julie Crawford, who was willing to represent her on the condition that the plaintiff obtain a continuance from the December 16, 2002 trial date. At the hearing, counsel for the defendant stated that he had spoken with Crawford, who had indicated that she was not going to take the plaintiff's case. He further argued that the plaintiff wilfully had interfered with visitation between the child, the defendant and the child's grandparents for one year despite a valid court order permitting such visitation. He requested that the case proceed as scheduled without additional delay. The child's previously appointed guardian ad litem, however, expressed her concern that harm could befall the child if the plaintiff were required to proceed without counsel. Nonetheless, the court denied the continuance, citing the history of the plaintiff's conduct and the resultant harm caused to the child. With those additional facts noted, we now turn to plaintiff's claim that the court should have granted her a continuance beyond the scheduled December 16, 2002 trial date to give her an opportunity to be represented by counsel in regard to the pending motions.

On appeal, the plaintiff framed the court's denial of her motion for a continuance as a due process violation for which she seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because her claim was not presented as constitutional at trial. Although the record is adequate for review, in order to reach the merits of the plaintiff's claim on appeal, we first must determine whether, under the facts of this

case, she has met her burden of proving that the denial of the requested continuance is a claim of constitutional magnitude. In general, a claim that a court improperly denied a motion for a continuance is not a constitutional claim, but rather one that rests in the discretion of the trial court. See *Hill* v. *Hill*, 35 Conn. App. 160, 163, 644 A.2d 951, cert. denied, 231 Conn. 914, 648 A.2d 153, cert. denied, 513 U.S. 1059, 115 S. Ct. 669, 130 L. Ed. 2d 603 (1994). If the denial of the continuance is directly linked, however, to a constitutional right, then due process rights are implicated, and the claim is of constitutional magnitude. See *In re Shaquanna M.*, 61 Conn. App. 592, 602, 767 A.2d 155 (2001).

In *In re Shaquanna M.*, supra, 61 Conn. App. 605–608, we held that due process rights were violated when the court denied the respondent a continuance to obtain new counsel for her children after the individual who had been serving as their attorney and guardian ad litem had died. *In re Shaquanna M.* involved a denial of a continuance in a proceeding to terminate parental rights. As the proceeding to terminate parental rights implicated the respondent's constitutional right to maintain a relationship with her children, we assessed the court's denial of the continuance pursuant to a procedural due process standard and not the general abuse of discretion standard. Id.

Similarly, in the present case, the plaintiff argues that if the motions by the defendant or the grandparents for custody or visitation were granted, her constitutional right to raise her child would have been affected. We agree. It is well established that parents have a fundamental right to make decisions regarding their child's care, control, education, health, religion and association. *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981). Our Supreme Court has held that a motion by a grandparent or third party for visitation affects such rights. See *Roth* v. *Wes-*

*ton*, 259 Conn. 202, 229, 789 A.2d 431 (2002) ("In the absence of a threshold requirement of a finding of real and substantial harm to the child as a result of the denial of visitation, forced intervention by a third party seeking visitation is an unwarranted intrusion into family autonomy. Accordingly, in the absence of any such requirement of harm, [General Statutes] § 46b-59 does not justify interference with parental rights."). We conclude, therefore, that because the hearing involved a request by grandparents for visitation, the plaintiff's motion for a continuance was sufficiently linked to a constitutional right to accord *Golding* review to the court's denial of her motion for a continuance.

Thus, we turn to the question of whether the court deprived the plaintiff of her right to due process. The plaintiff argues that this case is similar to *In re Shaquanna M.* and, consequently, we should conclude that the court's refusal to grant her a continuance was a due process violation. We are not persuaded. Although a proceeding to terminate parental rights and a proceeding to permit a nonparent visitation share the similar characteristic that they both implicate the right of a parent to raise a child, they are not identical requests. Although the granting of a petition to terminate parental rights ends a parent-child legal relationship, providing visitation between a child and a grandparent may, at most, interfere with the parent-child relationship. The difference in scale between the two is mirrored in our provision for counsel for a parent in a termination proceeding and the absence of such a provision in a custody or visitation contest. See General Statutes § 45a-717 (b). Because the nature of the rights and the level of intrusiveness differ in each instance, the procedural safeguards necessary to satisfy due process are not parallel. Thus, our analysis of the court's failure to grant a continuance in a termination case is not immediately applicable to the court's unwillingness to grant a contin-

uance in a custody or visitation dispute. See *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 319–20, 684 A.2d 1173 (1996) ("[i]t is axiomatic that 'due process is flexible and calls for such procedural protections as the particular situation demands' ").

The United States Supreme Court in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), established a three part test to determine whether the actions of the court violated a party's right to procedural due process. "The three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements." *In re Shaquanna M.*, supra, 61 Conn. App. 606. "Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Internal quotation marks omitted.) *State* v. *Patterson*, 236 Conn. 561, 571, 674 A.2d 416 (1996).

The private interest implicated in the case at hand is the plaintiff's constitutional right to make decisions regarding the child's care, control, education, health, religion and association without the interference of a nonparent. Although those rights are significant, they do not involve the potential loss of relationship that characterizes a termination proceeding.

We next turn to a consideration of "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards . . . ." *Mathews* v. *Eldridge*, supra, 424 U.S. 335. Although

there was a risk that the plaintiff's right to raise her child could have been affected by an adverse custody or visitation decision, it is not clear that giving the plaintiff a continuance would have lessened her jeopardy. Although she was provided more than six weeks to obtain new counsel, the plaintiff, as of one week before trial, had not obtained successor counsel. We are therefore not convinced that even if the court had acceded to the plaintiff's request for a continuance, she would have been able to secure substitute counsel in a timely manner.

Finally, the third prong of *Mathews* requires us to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that . . . additional or substitute procedural requirement would entail." Id. Although the costs in terms of dollars and administrative burdens are low, we must consider the court's interest in managing its docket as well as protecting the rights of all the parties. As of the date of the motion for a continuance, the plaintiff had wilfully violated the numerous orders of the court and, specifically, had prevented the defendant and the grandparents from visiting the child despite valid court orders permitting such visitation.

Applying all the *Mathews* factors, we conclude that the plaintiff's due process rights were not violated by the court's refusal to grant her a continuance one week in advance of a scheduled hearing in order to secure substitute counsel. As the plaintiff has no constitutionally protected right to counsel in a custody or visitation proceeding, we decline to require the court, in every custody or visitation dispute confronted with a pro se litigant, to grant a continuance simply because the request is founded on a parent's right to raise a child without undue interference. Although we recognize the value of family integrity, we acknowledge also that the state has an interest in the orderly presentation of cases

and the ability of the court to manage its docket. We therefore conclude that, balancing all the interests, the court's refusal to grant a continuance did not result in a constitutional deprivation. Before permitting counsel to withdraw, the court, as is required for due process, held a hearing at which the plaintiff offered no objection either to the court's determination to permit the withdrawal or to its admonition directly to the plaintiff that the case would proceed on December 16, 2002, whether or not she then was represented. Additionally, the court also gave the plaintiff ample time before the scheduled hearing date to obtain new counsel. We conclude, therefore, that in this regard, the court did not deprive her of her right to due process by denying her a continuance.

II

The plaintiff next argues that the court incorrectly refused to reinstate, thereby eliminating, the defendant's obligation to pay child support because of her interference with his visitation rights. We agree.

We review the court's ruling on a motion to modify child support, mindful that "[a] trial court is endowed with broad discretion in domestic relations cases. Our review of such decisions is confined to two questions: (1) whether the court correctly applied the law, and (2) whether it could reasonably have concluded as it did." (Internal quotation marks omitted.) *Lefebvre* v. *Lefebvre*, 75 Conn. App. 662, 664, 817 A.2d 750, cert. denied, 263 Conn. 921, 822 A.2d 243 (2003).

"General Statutes § 46b-86 governs the modification of a child support order after the date of a dissolution judgment. . . . [A] child support order cannot be modified unless there is (1) a showing of a substantial change in the circumstances of either party or (2) a showing that the final order for child support substantially deviates from the child support guidelines absent the requisite findings. . . . The party seeking modification

bears the burden of showing the existence of a substantial change in the circumstances." (Citation omitted; internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 173–74, 829 A.2d 885 (2003).

It is a well established principle that child support is premised upon a parent's obligation to provide for the care and well being of the minor child. See *Raymond* v. *Raymond*, 165 Conn. 735, 739, 345 A.2d 48 (1974) ("[t]he needs of the child, within the limits of the financial abilities of the parent, form the basis for the amount of support required"). Although the trial court is given wide discretion to modify child support on the basis of a substantial change in circumstances, interference with visitation alone is insufficient to warrant a reduction in child support. See id. (concluding that "duty to support is wholly independent of the right of visitation"). Although we do not condone the plaintiff's actions in this case, the court may not punish the child, who is the beneficiary of child support, for the sins of her mother. See id. Accordingly, because the court incorrectly applied the law regarding a parent's obligation to provide child support, it was an abuse of discretion for the court to have eliminated the defendant's child support obligations on the basis of the plaintiff's chronic interference with visitation. Accordingly, the order eliminating the defendant's child support obligation is vacated.

## III

The plaintiff next claims that the court incorrectly ordered that she and her daughter undergo psychological counseling. Specifically, the plaintiff argues that the court was without authority to order counseling after it reached its conclusions regarding child support and that the ordering of postjudgment therapy violates her constitutional rights. We disagree.

It is well established that the court may require the parties and the child to undergo a psychiatric or psychological evaluation for the purpose of properly disposing of a family matter, in a modification of custody case, to assist in determining the best interest of the child. See General Statutes §§ 46b-3 and 46b-6; *Pascal* v. *Pascal*, 2 Conn. App. 472, 478–79, 481 A.2d 68 (1984). Until recently, the trial court was without statutory authority to order parties to undergo counseling after entering orders regarding the custody of the minor child. See *Janik* v. *Janik*, 61 Conn. App. 175, 180, 763 A.2d 65 (2000) (concluding that "nothing in §§ 46b-3 and 46b-6 authorizes the court to order parties in a custody battle to undergo psychiatric therapy or counseling postjudgment since those provisions apply to pending family matters"), cert. denied, 255 Conn. 940, 768 A.2d 949 (2001). Our legislature, however, amended General Statutes § 46b-56 (g) in 2002, as follows: "As part of a decision concerning custody or visitation, the court may order either parent or both of the parents and any child of such parents to participate in counseling and drug or alcohol screening, provided such participation is in the best interest of the child." On the basis of that unambiguous statutory language, the court had the authority to order the plaintiff to undergo postjudgment counseling.

The plaintiff next argues that the order to undergo therapy violates her constitutional rights. The plaintiff, however, has failed to brief the claim adequately. The plaintiff has not cited § 46b-56 (g), nor made a claim that the statute is unconstitutional. Rather, the plaintiff makes the broad assertion that "presumably, there are constitutional protections afforded us in having a choice in our own health care providers, in raising our children without undue governmental interference and in not being incarcerated for civil contempt by resisting forced therapy at $12,000 per year." The plaintiff has

provided no standard of review and has engaged in minimal legal analysis by citing two United States Supreme Court cases that are inapplicable to the facts at hand.[3] "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned." (Citation omitted, internal quotation marks omitted.) *In re Shane P.*, 58 Conn. App. 234, 244, 753 A.2d 409 (2000). Consequently, we decline to review the claim.

## IV

The plaintiff next argues that the court abused its discretion in ordering her to pay one half of the attorney's fees of the defendant and the grandparents, totaling $16,000. We agree.

Although the decision to award counsel fees in a dissolution case is a matter within the court's discretion and the court has broad discretion to award fees, any award made by the court must be based on the relevant statutory criteria as well as the parties' financial ability to pay the fees. See *Miller* v. *Miller*, 16 Conn. App. 412, 418, 547 A.2d 922, cert. denied, 209 Conn. 823, 552 A.2d 430 (1988). Although the court had sufficient financial affidavits of all the parties before it, it is apparent from the court's order that the award of fees was based not upon the respective financial ability of the parties, but

[3] In her brief, the plaintiff cites *Washington* v. *Harper*, 494 U.S. 210, 221, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990), in which the United States Supreme Court recognized that an individual has a liberty interest in "avoiding the unwanted administration of antipsychotic drugs," and *United States* v. *Reidel*, 402 U.S. 351, 359, 91 S. Ct. 1410, 28 L. Ed. 2d 813 (1971) (Harlan, J., concurring), in which Associate Justice John M. Harlan referred to the "First Amendment right of the individual to be free from governmental programs of thought control . . . ." Because forced administration of antipsychotic medication and governmental thought control are of a different character than counseling, those cases are inapplicable to the case at bar.

rather the award served as a punishment to the plaintiff for her chronic interference with the defendant's and grandparents' visitation and her evident disrespect for court orders throughout the postjudgment proceedings.[4] Palpably, the award of fees was punitive in nature. Confronted with motions for custody, visitation and a reinstatement of child support, but no motion for contempt, it was incorrect for the court to base its award of counsel fees on the plaintiff's failure to cooperate with court orders. In sum, under the procedural circumstances, the plaintiff's conduct during the postjudgment proceedings was not a permissible basis for the court's order of counsel fees. As the award was not based on any relevant statutory criteria or the respective financial abilities of the parties, the imposition of that order by the court was an abuse of discretion. The order as to attorney's fees is vacated.

V

Last, the plaintiff argues that the court incorrectly incarcerated her after finding her in contempt on April 17, 2003. Specifically, the plaintiff argues that an unsworn statement from the child's guardian ad litem was insufficient to incarcerate the plaintiff for contempt. The plaintiff, however, has provided an inadequate record to review her claim. The judgment of April 17, 2003, does not state the specific evidence on which the court relied when it incarcerated the plaintiff, and she did not file a motion for articulation. Additionally, the plaintiff has not provided a transcript from the April 17, 2003 hearing in which she was found in contempt. In the absence of an articulation by the court or a transcript of the contempt proceedings, we have no

---

[4] In its memorandum of decision, the court stated that "[t]he court finds that [the plaintiff] has wilfully and intentionally violated every court order regarding visitation with the defendant . . . and paternal grandparents. Therefore [the plaintiff] shall be liable for 50 percent of their legal fees . . . ."

basis on which to conduct a review of the court's order. See *Bebry* v. *Zanauskas*, 81 Conn. App. 586, 594, 841 A.2d 282 (2004). Consequently, we decline to review the claim.

The judgments are reversed only as to the orders eliminating the defendant's child support obligation and requiring the plaintiff to pay attorney's fees and the case is remanded with direction to vacate those orders. In all other respects, the judgments are affirmed.

In this opinion the other judges concurred.