******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZHE ZHENG *v.* FEIFEI XIA
(AC 43948)

Lavine, Prescott and Suarez, Js.*

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the trial court's order granting the
defendant's postdissolution motion to modify child support, claiming
that the court improperly ordered him to pay the defendant a certain
percentage of his annual bonus income as supplemental child support.
In issuing its order, the trial court deviated from the child support
guidelines on the basis of the significant disparity between the parties'
incomes. *Held* that the trial court's reason for deviating from the child
support guidelines constituted an abuse of its legal discretion: the court
made no specific finding as to why the guidelines were inequitable or
inappropriate, save for alluding to the significant disparity between the
parties' incomes, and that reason to deviate from the child support
guidelines failed as a matter of law because, although our Supreme
Court has stated that income disparity may be considered when the
custodial parent has the higher income and deviation from the presump-
tive support amount would enhance the noncustodial parent's ability
to foster a relationship with the child, that was not the situation in the
present case, in which the unemployed defendant was the custodial
parent who had no income aside from child support, and, accordingly,
the court improperly considered the disparity between the parties'
incomes in ordering the defendant to pay a certain percentage of his
net bonus income as supplemental child support.

Submitted on briefs December 3, 2020—officially released May 4, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Stamford-Norwalk, where the court, *Hon. Stan-
ley Novack*, judge trial referee, rendered judgment dis-
solving the marriage and granting certain other relief
in accordance with the parties' separation agreement;
thereafter, the court, *M. Moore, J.*, granted the defen-
dant's motion to modify child support, and the plaintiff
appealed to this court. *Reversed in part; further pro-
ceedings*.

*Zhe Zheng*, self-represented, filed a brief as the appel-
lant (plaintiff).

*Opinion*

LAVINE, J. The self-represented plaintiff, Zhe Zheng, appeals from the judgment of the trial court granting the postjudgment motion to modify child support filed by the defendant, Feifei Xia.[1] On appeal, the plaintiff claims that the court improperly ordered him to pay the defendant 13 percent of his annual bonus as supplemental child support. In issuing its order, the trial court deviated from the child support guidelines on the basis of the "significant disparity in the parties' income." The reason to deviate given by the court is not a permissible rationale under the child support guidelines and *Maturo* v. *Maturo*, 296 Conn. 80, 99–103, 995 A.2d 1 (2010). We therefore reverse in part the judgment of the trial court and remand the case for further proceedings.

The following facts and procedural history, as disclosed by the record, are relevant to our resolution of the plaintiff's appeal. The parties were married in Stamford on March 28, 2010. Their only child was born in September, 2011. On January 26, 2012, the plaintiff commenced an action for dissolution of marriage on the basis of irretrievable breakdown. At the time the action was commenced, the plaintiff was employed as a hedge fund analyst, and the defendant was a law student. The parties entered into a separation agreement that included a detailed parenting plan, which the trial court, *Hon. Stanley Novak*, judge trial referee, incorporated into the uncontested judgment of dissolution rendered on July 23, 2013. Pursuant to the agreement, the parties share joint legal custody of their child, who is in the primary physical custody of the defendant. Judge Novak, pursuant to the separation agreement, ordered the plaintiff to pay the defendant unallocated alimony and child support in the amount of $1600 per month until August 2, 2014. On May 13, 2015, the court, *Tindill, J.*, ordered the plaintiff to pay the defendant $161 per week in child support. Since that time, the parties have filed numerous motions for orders of contempt and motions to modify child support. The present appeal concerns the motion to modify that was filed in early 2020.[2]

On January 22, 2020, the defendant, representing herself, filed a motion to modify child support (motion to modify), in which she represented that the plaintiff was a partner in a hedge fund who receives annual income consisting of an annual base salary, end-of-year bonuses, and partnership distributions. She also represented that, on June 29, 2017, a family support magistrate, Wayne R. Keeney, ordered the plaintiff to pay the defendant child support in the amount of $273 per week and lump sum, supplemental child support of $10,868, which was 12.97 percent of his net bonus. In her motion to modify, the defendant claimed that, as of January 15, 2020, there had been a substantial change in circumstances because the plaintiff's annual base salary had

increased from $200,000 to $250,000 and because his 2019 bonus income was $466,418. The defendant, therefore, sought an upward modification of the plaintiff's child support obligation, specifically, that his basic child support obligation be increased to an amount consistent with his new gross annual income and that he pay supplemental lump sum child support that he owes on his 2019 bonus. The defendant represented that she is not employed[3] and has no income other than child support. On February 5, 2020, the self-represented parties appeared before the court, *M. Moore, J.*, on the motion to modify.[4]

Judge Moore commenced the hearing by stating that she had "received the child support guidelines from family services, and pursuant to these guidelines . . . the [presumptive] child support is $416 per week."[5] The plaintiff questioned the percentage of the increase in child support because the increase was greater than the percentage increase in his base salary. The court explained to the plaintiff how the amount of child support is calculated. The plaintiff stated in response that, for the past couple of years, his base salary was used to calculate weekly child support because that amount was relatively stable. He also stated that his bonus varies "quite differently every year" and, for that reason, a lump sum, supplemental payment was made for each year in which he received a bonus. The plaintiff argued that his net income was more than $4000 per week and that the maximum amount under the child support guidelines is 12 percent of his net income. In response, the court stated: "So when your . . . net income [exceeds the highest amount on] the child support guidelines [schedule], I can deviate. I can determine based on all the factors what the child support figure is." The plaintiff, who remarried and has a child (qualified child) with his new wife, stated that he had one qualified child to consider and that he believed 10 percent of his net income was the proper percentage to use. The court stated that the child support guidelines worksheet provided to it had considered the plaintiff's qualified child.[6]

The plaintiff represented that his net income from the $466,418 gross bonus that he received in 2019 was $234,736. In response to the court's inquiry as to whether the defendant agreed with the figures, the defendant stated that she agreed with the gross amount but disagreed with the plaintiff's self-reported net income for two reasons: first, that the child support guidelines provide that the deductions should consider taxes and credits and that the plaintiff had utilized the maximum tax deductions without considering tax credits, and, second, that the plaintiff received "a lot of credits back." The court stated that it understood the defendant's objection.[7] At the time of the hearing, the plaintiff had not yet filed his 2019 tax returns. The defendant presented the court with copies of past orders regarding the plaintiff's supplemental child sup-

port obligations, which demonstrated a range of percentages to be paid on various amounts of the plaintiff's annual bonus income.[8] On the basis of past orders, the defendant requested that the plaintiff pay 12 percent of his net bonus as lump sum, supplemental child support.

At the conclusion of the hearing, Judge Moore stated in relevant part: "After conducting a hearing, the court finds a substantial change in circumstance and grants the defendant's motion for modification of child support based on the plaintiff's increase in income. The court finds the plaintiff's income for 2019 to be $666,000 gross as shown on his financial affidavit. The court finds the presumptive child support to be $416 per week and orders the plaintiff to pay said sum weekly. The court makes the finding that the application of child support guidelines in this case is inequitable and inappropriate. The court orders that the plaintiff must pay to the defendant 13 percent of his net bonuses as additional child support annually. This order is a deviation from the guidelines based on coordination of total family support and significant disparity in the parties' income. . . . [The plaintiff] shall pay . . . 13 percent of his net bonus to the defendant within seven days of his receipt of said bonus annually as additional child support. . . . The court finds [that] the plaintiff owes the defendant $30,115.68, equal to 13 percent of his bonus for 2019."[9] The court also ordered that, in future years, the plaintiff will be obligated to pay 13 percent of any bonus income he receives as lump sum, supplemental child support. The plaintiff appealed.

On appeal, the plaintiff claims that the court improperly (1) ordered him to pay 13 percent of his net 2019 bonus income and future bonus income as supplemental child support, (2) abused its discretion by deviating from the child support guidelines, and (3) failed to consider his qualified child when calculating his supplemental child support obligation.[10] Notably, the plaintiff does not claim that the court improperly found a substantial change of circumstances, ordered him to pay the defendant $416 a week in child support, or ordered him to pay supplemental child support. Although the plaintiff has raised several claims on appeal, the core of his challenge to the judgment is to the *percentage* of his net income that the court ordered him to pay the defendant as supplemental child support. In support of his claim, he relies on § 46b-215a-2c (c) (1) (B) (i) of the Regulations of Connecticut State Agencies, which provides in relevant part that a supplemental order may be entered only when the percentage is "*generally consistent* with the [child support guidelines] schedule . . . ."[11] (Emphasis added.)

Although the plaintiff's principal claim is that the court improperly ordered him to pay 13 percent of his bonus as supplemental child support, the issue, in substance, is whether the court abused its discretion by

deviating from the child support guidelines. We conclude that the court's reason for deviating from the child support guidelines constituted an abuse of its legal discretion; see *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 999 A.2d 721 (2010); *Maturo* v. *Maturo*, supra, 296 Conn. 99–101; and, therefore, we conclude that the court improperly ordered the plaintiff to pay the defendant 13 percent of his annual bonus as lump sum, supplemental child support.

The standard of review in domestic relations cases is well established. "[T]his court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Simms* v. *Simms*, 283 Conn. 494, 502, 927 A.2d 894 (2007). "In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 740, 785 A.2d 197 (2001). "Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law. . . . The question of whether, and to what extent, the child support guidelines apply, however, is a question of law over which this court should exercise plenary review." (Citation omitted; internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 367.

We begin with a review of the statutory scheme regarding child support and the guidelines. "The legislature has enacted several statutes to assist courts in fashioning child support orders. [General Statutes §] 46b-84 provides in relevant part: '(a) Upon or subsequent to the . . . dissolution of any marriage . . . the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. Any postjudgment procedure afforded by chapter 906 shall be available to secure the present and future financial interests of a party in connection with a final order for the periodic payment of child support. . . .

" '(d) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills,

employability, estate and needs of the child.' " *Maturo* v. *Maturo*, supra, 296 Conn. 89–90.

General Statutes § 46b-215a provides for a commission to establish child support guidelines in order to ensure that child support awards are appropriate. See id., 90. "The . . . guidelines issued pursuant to section 46b-215a . . . and in effect on the date of the support determination shall be considered in all determinations of child support award amounts . . . . In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. *A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case*, as determined under the deviation criteria established by the Commission for Child Support Guidelines under section 46b-215a, *shall be required in order to rebut the presumption in such case.*" (Emphasis added.) General Statutes § 46b-215b (a).

"The support guidelines are codified in §§ 46b-215a-1 and 46b-215a-2[c] of the Regulations of Connecticut State Agencies." (Footnote omitted.) *Hayward* v. *Hayward*, 53 Conn. App. 1, 7, 752 A.2d 1087 (1999). The preamble to the child support guidelines "explains that the guidelines are based on the income shares model, which considers the income of both parents and presumes that the child should receive the same proportion of parental income as he or she would have received if the parents lived together. . . . Children's economic needs do not increase automatically, however, with an increase in household income. Although parents may spend more on their children in absolute dollars as their income grows, thus raising the child's station and standard of living, *the income shares model reflects the principle that spending on children as a percentage of household income actually declines as family income rises*. The preamble specifically notes that economic studies have found that spending on children declines as a proportion of family income as that income increases, and a diminishing portion of family income is spent on each additional child." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Maturo* v. *Maturo*, supra, 296 Conn. 93; see Child Support and Arrearage Guidelines (2015), preamble, § (d), pp. v–vi.

"[T]he applicable statutes, as well as the guidelines, provide *all* child support awards must be made in accordance with the principles established therein to ensure that such awards promote equity, uniformity and consistency for children at *all income levels.*" (Emphasis in original; internal quotation marks omitted.) *Maturo* v. *Maturo*, supra, 296 Conn. 94–95. "[A]lthough courts may, in the exercise of their discretion, determine the correct percentage of the combined net weekly income

assigned to child support in light of the circumstances in each particular case, including a consideration of other, additional obligations imposed on the noncustodial parent, any deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of the child." Id., 95–96.

In the present case, the court found that "the application of [the] child support guidelines . . . is inequitable and inappropriate" and ordered the plaintiff "pay to the defendant 13 percent of his net bonuses as additional child support annually. This order is a deviation from the guidelines based on [the] coordination of total family support and significant disparity in the parties' income." The court, however, made no specific finding as to why the child support guidelines were inequitable and inappropriate, save for alluding to the significant disparity between the parties' incomes. That reason to deviate from the child support guidelines, i.e., disparity between the incomes of the parties, fails as a matter of law. Our Supreme Court has stated that "[i]ncome disparity may be considered . . . only when the *custodial parent* has the higher income and deviation from the presumptive support amount would enhance the lower income [noncustodial] parent's ability to foster a relationship with the child . . . . This consideration is unambiguously intended to protect the noncustodial parent in circumstances where the income of the custodial parent far exceeds the income of the parent obligated to pay child support . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 101. That is not the situation in the present case, in which the unemployed defendant is the custodial parent who has no income aside from child support. The court, therefore, improperly considered the disparity between the parties' incomes when it ordered the plaintiff to pay the defendant 13 percent of his net bonus income as supplemental child support. For this reason, we reverse the judgment only with respect to the lump sum, supplemental child support order.

The judgment is reversed only as to the lump sum, supplemental child support order and the case is remanded for further proceedings consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date the appeal was submitted on briefs.

[1] The defendant did not file a brief or otherwise participate in the present appeal. We have considered the claims raised by the plaintiff on the basis of his brief and the record. See, e.g., *Rosario* v. *Rosario*, 198 Conn. App. 83, 84 n.1, 232 A.3d 1105 (2020).

[2] The parties' relationship is highly litigious. The trial court docket contains more than 270 entries, with at least 100 of them having been entered after the judgment of dissolution was rendered.

[3] During the hearing, the plaintiff protested the defendant's lack of employ-

ment stating that she has a master's degree and had attended law school. The defendant stated to the court that she is seeking employment but that her immigration status and lack of a green card present employability problems.

[4] The court also addressed the defendant's motion for contempt, which concerned the child's summer camp activities and who would pay the associated fees. The motion for contempt is not at issue in the present appeal.

[5] The child support guidelines worksheet filed in court on February 5, 2020, indicates that the plaintiff's weekly gross income was $4807 and that his net weekly income was $3005. The plaintiff's presumptive child support amount was $416 per week, which constituted 13.84 percent of his net income.

[6] Pursuant to § 46b-215a-2c (d) (A) of the Regulations of Connecticut State Agencies, "A qualified child is one: (i) who is currently living in the same household with the parent; (ii) who is a dependent of the parent; (iii) who is not a subject of the support determination; and (iv) for whom the parent has not claimed a deduction under section 46b-215a-1 (1) (*l*) of the regulations of Connecticut State Agencies."

The child support guidelines worksheet filed in court on February 5, 2020, indicates that the plaintiff's qualified child was taken into consideration when the plaintiff's child support obligation was calculated. The amount reserved for the plaintiff's qualified child was $318 per week.

[7] The court stated to the plaintiff that his accurate net income, when taxes are taken into account, are "not taxes that you decide, taxes that the government decides." The court also noted that the plaintiff had failed to include his bonus income on some of his financial affidavits. The court also found that the plaintiff had included only a portion of his bonus income on his financial affidavits, that which he had been paid to date, not the total amount.

[8] The defendant stated with respect to the prior child support orders: "[F]or 2017 bonus income, [the plaintiff] receive[d] $767,905. Even though, you know, [it] exceeds the maximum number in the guideline[s] even though [the] magistrate court still ordered him to pay . . . $47,253.72, which . . . is 17.67 percent of the net—his self-reported net, 6.15 percent of gross. So that number—I mean, for that year the bonus—the gross bonus income is far more than the number now."

[9] Our review of the transcript of the hearing discloses that the court found that the plaintiff's *net* income from his 2019 bonus was $234,736. The plaintiff does not challenge that finding. The plaintiff did not file a motion for articulation of the court's succinct order.

[10] We reverse, in part, the judgment of the trial court on the ground that the reason given by the court to deviate from the child support guidelines was improper. We need not reach the plaintiff's remaining claims as we are not persuaded that they are likely to arise on remand. See *State* v. *Norman P.*, 169 Conn. App. 616, 618 n.2, 151 A.3d 877 (2016) (generally speaking, if judgment is reversed and remanded for new trial, appellate court may review other claims that are likely to arise on retrial), aff'd, 329 Conn. 440, 186 A.3d 1143 (2018).

[11] This court construed the meaning of " 'generally consistent' " in *Gentile* v. *Carneiro*, 107 Conn. App. 630, 644, 946 A.2d 871 (2008).