******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# J. E. *v.* J. N.*
## (AC 47248)

Suarez, Westbrook and Bishop, Js.

### *Syllabus*

The defendant father appealed from the trial court's judgment awarding him joint legal custody of the parties' minor children and issuing certain other orders on the plaintiff mother's application for custody. He claimed, inter alia, that the court improperly required him to proceed with the trial in the absence of his counsel of record, who had requested and been denied a continuance. *Held*:

This court, having determined that the defendant's unpreserved due process claim was reviewable pursuant to *State* v. *Golding* (213 Conn. 233), concluded that the trial court deprived the defendant of his procedural due process rights under the test established in *Mathews* v. *Eldridge* (424 U.S. 319) by requiring him to proceed with trial in the absence of his counsel of record and, thus, this court reversed the judgment of the trial court.

Argued March 12—officially released June 17, 2025

### *Procedural History*

Application for custody of the parties' minor children, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Truglia, J.*, denied the defendant's motion for a continuance; thereafter the case was tried to the court, *Truglia, J.*; judgment awarding the parties joint legal custody and issuing certain orders of visitation, from which the defendant appealed to this court. *Reversed*; *further proceedings*.

*J. N.*, self-represented, the appellant (defendant).

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

*Opinion*

SUAREZ, J. In this custody action, the self-represented defendant, J. N., appeals following the trial court's judgment of custody and orders of visitation with respect to the parties' minor children.[1] On appeal, the defendant claims, inter alia, that the court improperly required the defendant to proceed with the underlying custody trial in the absence of his attorney.[2] We agree with the defendant and, accordingly, reverse the judgment of the court.

The following procedural history is relevant to this appeal. The plaintiff, J. E., and the defendant are the parents of two minor children. On April 22, 2022, the plaintiff filed an application for an emergency ex parte

[1] The plaintiff, J. E., did not file a brief or otherwise participate in this appeal. Consequently, on December 10, 2024, this court issued an order stating that "the appeal shall be considered on the basis of [the defendant's] brief and, if applicable, the appendix, the record, as defined by Practice Book [§] 60-4, and oral argument . . . ."

[2] In his brief to this court, the self-represented defendant sets forth the following claims in his statement of issues: "1. Did the trial court abuse its discretion when it proceeded with trial in the absence of the defendant's attorney? 2. Did the trial court abuse its discretion by allowing the plaintiff to present evidence not compliant with the management orders for trials? 3. Did the plaintiff perjure affidavits and deceive the courts to secure child support? 4. Did the plaintiff perjure financial affidavits and testimony and commit . . . forgery in the second degree [in violation of General Statutes § 53a-139] to get more child support than she was supposed to receive? 5. Did the trial court abuse its discretion when it gave the plaintiff primary physical custody? 6. Do the courts lack jurisdiction because the defendant's constitutional rights were violated, and Title 42 is not a law?" With respect to his final claim on appeal, the defendant argues that the court lacked jurisdiction "because of an impartial trial." We understand the defendant's jurisdictional claim to be a due process claim related to his first claim on appeal and, thus, we will address them simultaneously. Because we agree with the defendant that the court improperly required the defendant to proceed without his counsel of record, we need not consider the defendant's remaining claims, as the issues raised therein are not likely to arise during the proceedings on remand. See, e.g., *Zheng* v. *Xia*, 204 Conn. App. 302, 308 n.10, 253 A.3d 69 (2021).

order of custody, together with a custody application.[3] The court, *Heller, J.*, granted temporary legal and physical custody of the children to the plaintiff and scheduled a hearing to be held on May 6, 2022. On May 6, 2022, the parties agreed that the April 22, 2022 orders would continue until further order of the court. On the same day, the court, *Hon. Edward R. Karazin, Jr.*, judge trial referee, approved the agreement and entered it as an order of the court.

On May 20, 2022, the defendant filed an appearance in this matter as a self-represented party. On June 22, 2022, the defendant filed a pendente lite motion for modification seeking to modify the May 6, 2022 orders. In his motion, the defendant asserted that the circumstances of the case had changed substantially in that a criminal protective order had been modified to remove the minor children from protection. On July 13, 2022, the court, *McLaughlin, J.*, issued a scheduling order in which the court set forth a time frame for pretrial discovery. On September 9, 2022, the defendant filed a motion for a continuance seeking additional time to obtain counsel. The court, *Kowalski, J.*, granted the defendant's motion.

On December 12, 2022, Attorney Darnell D. Crosland filed an appearance in place of the defendant's appearance pursuant to Practice Book § 3-8 (a).[4] On April 10,

---

[3] In her April 22, 2022 affidavit in support of her application, the plaintiff averred that, on April 15, 2022, the parties engaged in a physical altercation during which the defendant struck, punched, and choked the plaintiff, in addition to throwing her onto the floor and against the minor children's cribs. The plaintiff further averred that she feared for her life and that the minor children were present throughout the altercation.

[4] Practice Book § 3-8 (a) provides in relevant part: "Whenever an attorney files an appearance for a party, or the party files an appearance for himself or herself, and there is already an appearance of an attorney or party on file for that party, the attorney or party filing the new appearance shall state thereon whether such appearance is in place of or in addition to the appearance or appearances already on file. . . ."

2023, the court, *Kowalski, J.*, issued a new order in which it scheduled a trial to commence on December 19, 2023. On December 15, 2023, Crosland filed a motion for a continuance of the scheduled trial, indicating that he was not available. On the same day, the court, *Truglia, J.*, denied the motion for a continuance and ordered that "the trial [would] proceed as scheduled."

On December 19, 2023, the court commenced the trial as scheduled. After the plaintiff's counsel called his first witness to testify and prior to the start of that testimony, the following colloquy occurred between the defendant, the court, and the plaintiff's counsel:

"The Defendant: Your Honor, if I may?

"The Court: Yes, sir.

"The Defendant: My attorney was supposed to be here. I'm not sure where he is. I got a text message from him saying that he wouldn't make it today.

"The Court: Okay.

"The Defendant: So, I am supposed to have legal counsel today.

"The Court: You are?

"The Defendant: Yes. Attorney Crosland is supposed to be the attorney on the case.

"The Court: Right. I understand that he filed a motion for continuance.

"The Defendant: That I didn't know, either. I'm sorry to interrupt. I wasn't aware that he filed a continuance.

"The Court: He filed a motion for a continuance on December [15, 2023] saying that he is out of the country, and I denied it.

"The Defendant: Okay.

"The Court: So, you can file an appearance on your own. . . .

"[The Plaintiff's Counsel]: I think he has one in the file for himself already, Your Honor.

"The Court: Oh, is that true?

"The Defendant: There was one before I retained counsel.

"The Court: Well, it looks like that was an in lieu of appearance. That's strange. . . .

"The Court: Yeah, Attorney Crosland filed an appearance in lieu of your appearance. So, you really should file another appearance for yourself, sir, today. We'll give you that form, all right?[5]

"The Defendant: Yes, Your Honor. . . .

"The Court: All right. So, counsel, please proceed." (Footnote added.)

Thereafter, the trial proceeded as scheduled. The record reflects, however, that the defendant did not have pertinent information that had been provided to his counsel. For example, the following exchange occurred between the court and the defendant with respect to the plaintiff's proposed orders for custody and child support:

"The Court: Sir, do you have a copy of these proposed orders?

"The Defendant: I do not, Your Honor. I don't have anything."

Similarly, when the plaintiff's counsel sought to introduce exhibits into evidence, the following colloquy

---

[5] The record reflects that the defendant did not file an appearance in place of Attorney Crosland until March 6, 2024, approximately three and one-half months after the custody trial, and after the present appeal was filed. The defendant has since been self-represented.

occurred between the defendant, the court, and the plaintiff's counsel:

"The Defendant: Your Honor, I just have a . . . question of evidence.

"The Court: What's that?

"The Defendant: To my understanding, was this supposed to be presented prior to court proceedings and given to Your Honor?

"The Court: Yes.

"The Defendant: So, I object to this evidence, Your Honor.

"[The Plaintiff's Counsel]: And it was given to his counsel, in accordance with the trial management.

"The Court: If it was given to your counsel, then that is good enough. Counsel represents to the court that she gave copies of all of the proposed exhibits to your lawyer. And I assume you did that in accordance with the trial management standing orders?

"[The Plaintiff's Counsel]: I did, Your Honor. . . . I know, certainly, counsel got a copy of [the proposed exhibits]. And also, the proposed [exhibits] . . . were sent, once the continuance was denied, to [the defendant] . . . yesterday, as well.

"The Court: Oh.

"[The Plaintiff's Counsel]: So, he had at least notice of them personally, yesterday.

"The Court: Okay. Objection overruled. Let's keep going. . . .

"The Defendant: I just, I don't see it. How was this delivered? Was it via email? Was it via fax? . . .

"The Court: How did you send it to [the defendant], that's the question. . . .

"[The Plaintiff's Counsel]: Via email.

"The Court: Via email?

"[The Plaintiff's Counsel]: Yes. It was sent to you via email from my office . . . .

"The Court: Right. Sir, this . . . document is simply a copy of the court's order . . . so, this is already in the record in this case. I'm going to allow it as a full exhibit."

Moreover, when the plaintiff's counsel sought to introduce financial evidence in relation to child support, the following colloquy ensued in connection with the defendant's lack of understanding of the scope of trial:

"The Defendant: Objection, Your Honor—

"The Court: I'm sorry?

"The Defendant: [O]bjection, but in the form of a question, because I don't understand the rule of evidence too much. We are here for custody. Is this a . . . child support trial or a custody trial?

\* \* \*

"The Defendant: "I don't mean to prolong this, because I don't have an attorney . . . . I'm sorry, child support has already been ruled upon by a judge.[6] It's

---

[6] On June 20, 2022, the plaintiff filed a pendente lite motion for support and maintenance seeking support from the defendant for the parties' minor children. On December 20, 2022, the court, *Vizcarrondo, J.*, held a hearing on the plaintiff's pendente lite motion. The court issued orders requiring the defendant "to pay child support in the amount of $288 per week" and 42 percent of any work-related childcare expenses. On January 27, 2023, the plaintiff filed a pendente lite motion for contempt that sought enforcement of the December 20, 2022 child support orders. On April 10, 2023, the parties agreed that the defendant would pay the plaintiff $4008 in child support arrearages by May 10, 2023, and a further $2284.80 in childcare expenses arrearages by June 10, 2023. The court, *Kowalski, J.*, approved the agreement and entered it as an order of the court. On May 23, 2023, the plaintiff filed a pendente lite motion for contempt that sought enforcement of the April

been sent over to [the Office of] Child Support Services. They are deducting the pay. I don't understand . . . . I don't understand . . . .

"The Court: Sir.

"The Defendant: I don't understand . . . ." (Footnote added.)

On December 26, 2023, after the conclusion of evidence, the court issued the following orders: "1. The parties are awarded joint legal custody of their minor children. Both parties will have equal decision-making authority for all major decisions affecting the children. 2. The plaintiff will have primary physical custody of the minor children and will provide them with their primary residence. 3. The defendant will have parenting time with the children three weekends each month from 6 p.m. Friday to 6 p.m. Sunday. . . . 18. . . . Commencing December 25, 2023, and weekly thereafter, the court orders the defendant to pay weekly child support to the plaintiff of $288, plus $142.80 for the [children's] work-related childcare, plus $58 to be applied to the arrearage, for a total weekly payment of $488.80. Additionally, the court orders the defendant to pay the $5000 arrearage ordered by this court, *Kowalski*, *J.*, on August 21, 2023, to the plaintiff on or before February 1, 2024, plus the accumulated additional arrearage of $1950.40 on or before February 1, 2024, for a total payment of $6950.40 due on or before February 1, 2024." This appeal followed.

As a threshold matter, we address the reviewability of the defendant's claim. During the trial, the defendant

10, 2023 child support orders. On August 21, 2023, the court held a hearing on the plaintiff's May 23, 2023 motion for contempt. On the same day, the court issued new orders requiring the defendant to pay the plaintiff "$5000, in full satisfaction of all weekly child support and childcare arrearages." The court further ordered the defendant to pay the plaintiff child support and work-related childcare expenses in the amount of $430.80 per week.

did not request a continuance on the grounds that his attorney should be present, nor did he assert that his due process rights were being violated. On appeal, however, the defendant argues that the court abused its discretion when it proceeded with the trial in the absence of his counsel of record and that the court lacked jurisdiction because his constitutional rights were violated. See footnote 2 of this opinion. We understand the defendant's claim to be an unpreserved due process claim. Because the defendant has presented a record that is adequate for review and has affirmatively demonstrated that his claim is indeed a violation of a fundamental constitutional right,[7] we review his unpreserved constitutional claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[8] See also *State* v. *Elson*, 311 Conn. 726, 754–55, 91 A.3d 862 (2014) (overruling requirement that appellant must affirmatively request *Golding* review in its appellate

---

[7] It is well established that "[a] parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the [f]ourteenth [a]mendment. . . . Before a parent can be deprived of her right to the custody, care, and control of her child, he or she is entitled to due process of law." (Internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 508, 72 A.3d 367 (2013).

[8] "Pursuant to *Golding*, a [defendant] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [defendant] of a fair trial; and (4) if subject to harmless error analysis, the [opposing party] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Emphasis in original; internal quotation marks omitted.) *In re Gabriella M.*, 221 Conn. App. 827, 836, 303 A.3d 319, cert. denied, 348 Conn. 925, 304 A.3d 443 (2023). We need not address the fourth prong of *Golding* because, even if subject to harmless error analysis, the plaintiff has the burden to show the harmlessness of the alleged constitutional violation, and the plaintiff did not file a brief or otherwise participate in this appeal. See footnote 1 of this opinion.

brief in order to review unpreserved constitutional claims).

As we have already indicated, the first two prongs of *Golding* are met because the record is adequate for review, and we construe the claim as implicating the defendant's due process rights. Thus, we turn to the third prong of *Golding* and consider whether the court deprived the defendant of his right to due process. "A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. . . . It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution . . . that persons whose . . . rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner. . . . Whe[n] a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained. . . . Whether a party was deprived of [his] due process rights is a question of law to which appellate courts grant plenary review." (Citations omitted; internal quotation marks omitted.) *Kosar* v. *Giangrande*, 228 Conn. App. 749, 758, 326 A.3d 266, cert. denied, 350 Conn. 930, 326 A.3d 556 (2024).

"The United States Supreme Court in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), established a three part test to determine whether the actions of the court violated a party's right

to procedural due process. The three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements. . . . Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Citation omitted; internal quotation marks omitted.) *Foster* v. *Foster*, 84 Conn. App. 311, 319, 853 A.2d 588 (2004).

"With respect to the first prong of *Mathews*, [a] defendant has an interest in the custody of his child and, therefore, in a custody adjudication process that grants him custody if it is in the child's best interest. From a procedural due process standpoint, the defendant's custody interest is legitimate only to the extent that those procedures facilitate an accurate custody determination, that is, a custody determination consistent with the child's best interest. . . . In cases in which both parents seek custody, [n]either parent has a superior claim to the exercise of [the] right to provide care, custody, and control of the children. . . . Effectively, then, each fit parent's constitutional right neutralizes the other parent's constitutional right, leaving, generally, the best interests of the child as the sole standard to apply to these types of custody decisions. Thus, in evaluating each parent's request for custody, the parents commence as presumptive equals and a trial court undertakes a balancing of each parent's relative merits to serve as the primary custodial parent; the child's best interests [tip] the scale in favor of an award of custody to one parent or the other. . . .

"Under the second prong of *Mathews*, we must evaluate the risk of an erroneous deprivation of [a] defendant's custody rights under the existing procedures and the probable value, if any, of additional procedural safeguards." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 509–10, 72 A.3d 367 (2013). Therefore, we must determine whether the court's order requiring the defendant to proceed with the custody trial without counsel of record created a greater risk that the defendant would not have been granted custody when that custody is in the best interests of the children and whether counsel's presence would have enhanced the accuracy of the custody determination. See id.

Finally, the third prong of *Mathews* requires us to consider "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that . . . additional or substitute procedural requirement[s] would entail." (Internal quotation marks omitted.) *Foster* v. *Foster*, supra, 84 Conn. App. 320. "[T]he government has a paramount interest in custody adjudication procedures that facilitate an accurate determination of the child's best interest." *Barros* v. *Barros*, supra, 309 Conn. 517.

In the present case, the private interest implicated is the defendant's fundamental constitutional right to make decisions regarding his children's care, control, education, health, religion, and association. "It is well established that the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court. . . . The rights to conceive and to raise one's children have been deemed essential . . . basic civil rights of man . . . [r]ights far more precious . . . than property rights . . . ." (Citation omitted; internal quotation marks omitted.) *In re Zakai F.*, 336 Conn. 272, 291, 255 A.3d 767 (2020).

Under the existing procedures taken in the present case, the risk of an erroneous deprivation of such interest was significant. As stated previously in this opinion, the defendant had counsel of record, and the defendant expected his counsel to be present to represent him in the custody action. The defendant was not aware that his counsel filed for a continuance of the trial and that the continuance was denied. The record is clear that the defendant was not prepared to represent himself meaningfully. The defendant did not have trial exhibits or proposed orders and did not seem to understand the scope of the trial. Under these circumstances, we are persuaded that counsel's assistance would have enhanced the accuracy of the child custody determination.

Finally, we are persuaded that the third prong of *Mathews* also weighs in favor of the defendant. The cost and administrative burden of merely granting a short continuance to allow the defendant to either hire substitute counsel or properly prepare to represent himself would have been de minimis, while facilitating an accurate determination of the children's best interests by ensuring the defendant had a meaningful opportunity to be heard.

Applying all the *Mathews* factors, we conclude that the court deprived the defendant of his due process rights by requiring him to proceed with the custody trial in the absence of his counsel of record.[9]

[9] We note that several postjudgment motions have been filed subsequent to the December 26, 2023 judgment. In 2024, the defendant filed several motions to dismiss. These motions seek to dismiss the court's child support orders on the basis of allegations that, inter alia, the plaintiff perjured certain affidavits and testimony in connection with the underlying case, the plaintiff committed forgery in the second degree in violation of General Statutes § 53a-139, the defendant's constitutional rights were violated, and "Title IV-D [of the Social Security Act] is unconstitutional." In his March 7, 2024 motion to dismiss, the defendant further alleged that "[t]he plaintiff refuses to agree to 50/50 physical custody." On October 18, 2024, the defendant filed a motion to modify child support. In December, 2024, the plaintiff filed an application for an emergency ex parte order of custody and a postjudgment motion for modification of custody. The court, *Kowalski, J.*,

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

granted the ex parte order of custody. On December 18, 2024, following a hearing, the court, *Cirello, J.*, vacated the ex parte order of custody and denied the plaintiff's postjudgment motion for modification of custody. On January 24, 2025, the defendant filed a motion to modify custody, seeking to modify the parenting schedule ordered by the court on December 26, 2023. These motions remain pending.