******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSE A. TORO
(AC 38215)

DiPentima, C. J., and Mullins and Bishop, Js.

*Argued January 12—officially released May 9, 2017*

(Appeal from Superior Court, judicial district of
Waterbury, Moll, J.)

*James E. Mortimer*, with whom, on the brief, was
*Michael D. Day*, for the appellant (defendant).

*Peter A. McShane*, state's attorney, with whom, on
the brief, were *Maureen Platt*, state's attorney, *Lisa
Herskowitz*, senior assistant state's attorney, and *Elena
Palermo*, assistant state's attorney, for the appellee
(state).

*Opinion*

MULLINS, J. The defendant, Jose A. Toro, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (1), and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1).[1] The defendant claims that the court abused its discretion by admitting evidence of his uncharged misconduct. The defendant, however, has not included an analysis in his main appellate brief pertaining to how this allegedly improper ruling was harmful. Consequently, we conclude that the defendant's claim is inadequately briefed and, therefore, unreviewable. Accordingly, we affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history inform our review. In February, 2013, the victim, Wilfredo Rivera, had been dating his girlfriend, Luz Torres, for approximately four years. Prior to their relationship, Torres had been involved with another individual, who had been a friend of the defendant. When that relationship ended, the defendant sought to date Torres, but she was not interested. Instead, she began dating the victim, which upset the defendant. The defendant then began threatening the victim and Torres, telling them that he would kill them if they did not end their relationship. These threats soon escalated to physical violence.

On February 4, 2013, at approximately 8:15 a.m., the victim took his dog for a walk on the sidewalk outside of his Waterbury apartment. As the dog made its way to some bushes on the side of a building, the victim let go of its leash but followed the dog into the bushes. As the victim exited the bushes, he saw the defendant standing on the sidewalk holding a machete in his hands. The victim grabbed his dog and started running back toward his apartment. The defendant chased the victim, repeatedly saying that he was going to kill him. The victim was yelling as the defendant chased him, which caused Torres to look out of the window of the victim's apartment. Torres observed the victim running while being chased by another person, but she could not see the face of the other person. A neighbor, Roberto Millan, also heard yelling, and, when he looked out of his window, he saw the victim and a man with a machete engaged in a confrontation.

During the chase, the victim fell to the ground. The defendant then swung the machete at him and hit him on the back of his leg. The victim was able to block the blow substantially by using a metal flashlight he had been carrying. As a result, the victim sustained only a minor injury to his leg. After taking the hit, the victim managed to get on his feet, and he ran behind a vehicle. At that point, the defendant left the scene. The victim

returned to his apartment and told Torres what had happened, and she telephoned police.

Shortly thereafter, the defendant was arrested on several charges, and, following a jury trial, the jury found him guilty of attempt to commit assault in the first degree and breach of the peace in the second degree. See footnote 1 of this opinion. The court sentenced the defendant to a total effective sentence of twelve years incarceration, execution suspended after seven years, five years of which were mandatory, followed by three years probation. This appeal followed. Additional facts will be set forth as necessary in consideration of the defendant's claim.

In this appeal, the defendant claims that the court abused its discretion by admitting evidence of uncharged misconduct. Specifically, he asserts that the court erred in admitting the uncharged misconduct evidence that, on February 3, 2013, the day before the attack on the victim that is the subject of this appeal, the defendant had chased the victim with a knife and threatened to kill him. The defendant argues that this evidence was unduly prejudicial and that the court should have excluded it. He fails to argue in his main brief to this court, however, that the trial court's erroneous admission of this evidence was harmful error. Thus, because the defendant has failed to brief adequately how he was harmed by this allegedly improper evidentiary ruling, we decline to review the defendant's claim.

The following additional facts are relevant. Prior to trial, the state filed two notices of intent to admit uncharged misconduct. The defendant does not challenge on appeal the court's admission of various uncharged misconduct evidence offered by the state in its first notice.[2]

In the second notice, which is the subject of this appeal, the state sought "to introduce testimony from [the victim] that, on February 3, 2013, the defendant came at [the victim] with a knife threatening to kill him." In response to the two notices, the defendant filed a motion in limine asking the court to preclude the state from eliciting any testimony, or offering any evidence, as to *any* uncharged misconduct on the part of the defendant, including the February 3, 2013 incident. The court denied the motion in limine, thereby permitting the state to offer evidence of the defendant's prior misconduct. At trial, the state elicited the details of the February 3, 2013 incident during its direct examination of the victim, and it relied on such testimony in its closing argument.

On appeal, the defendant claims that the evidence from the February 3, 2013 incident should not have been admitted because it was unduly prejudicial. He contends that the evidence of the February 3, 2013 incident "made the defendant appear as a knife wielding

criminal, actively attempting to stab [the victim] the day before the operative crime," and that it, therefore, was unduly prejudicial. Moreover, according to the defendant, the evidence of such uncharged misconduct was particularly prejudicial because the charged conduct did not "far outweigh, in terms of severity, the character of the uncharged misconduct . . . ." In his main brief, however, the defendant did not present any argument on how the court's alleged improper admission of this evidence constituted harmful error.

The state responds that we should not review the defendant's claim because it is inadequately briefed. Specifically, the state contends that because the defendant fails to allege in his main brief what harm he suffered, even if the court had abused its discretion by admitting this evidence, he has abandoned his claim by not adequately briefing it.

In his reply brief, the defendant presents his harmful error analysis for the first time. He also contends in his reply brief that he had addressed the issue of harm adequately in his main brief. In particular, he argues that his discussion of the court's improper admission of the uncharged misconduct evidence focused on his contention that the evidence's probative value did not outweigh its prejudicial effect. Therefore, according to the defendant, his argument regarding the evidence's prejudicial effect was the equivalent of an argument on harmful error. We agree with the state that the defendant failed to brief the issue of harm adequately and, therefore, has abandoned this claim.[3]

"Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. . . . Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. . . . To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence. . . . Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. . . . We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred." (Internal quotation marks omitted.) *State* v. *Kalil*, 314 Conn. 529, 539–40, 107 A.3d 343 (2014).

Our Supreme Court "has identified four factors rele-

vant to determining whether the admission of otherwise probative evidence is unduly prejudicial. These are: (1) where the facts offered may unduly arouse the [jurors'] emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Hill*, 307 Conn. 689, 698, 59 A.3d 196 (2013).

"It is well settled that, absent structural error, the mere fact that a trial court rendered an improper ruling does not entitle the party challenging that ruling to obtain a new trial. An improper ruling must also be harmful to justify such relief. . . . The harmfulness of an improper ruling is material irrespective of whether the ruling is subject to review under an abuse of discretion standard or a plenary review standard. . . . When the ruling at issue is not of constitutional dimensions, the party challenging the ruling bears the burden of proving harm." (Internal quotation marks omitted.) *State* v. *Baker*, 168 Conn. App. 19, 36, 145 A.3d 955, cert. denied, 323 Conn. 932, 150 A.3d 232 (2016).

"[W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Eleck*, 314 Conn. 123, 129, 100 A.3d 817 (2014).

"It is a fundamental rule of appellate review of evidentiary rulings that if [the] error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 527, 864 A.2d 847 (2005); see also *State* v. *Kirsch*, 263 Conn. 390, 412, 820 A.2d 236 (2003) ("in order to establish reversible error on an evidentiary impropriety, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse"). "We do not

reach the merits of [a] claim [where] the defendant has not briefed how he was harmed by the allegedly improper evidentiary ruling." *State* v. *Baker*, supra, 168 Conn. App. 35; see also *In re James O.*, 160 Conn. App. 506, 526, 127 A.3d 375 ("[E]ven if we assume, without deciding, that . . . the exhibits in question were improperly admitted into evidence, the respondent has failed adequately to brief how she was harmed by the erroneous admission. Because the respondent has failed to brief the issue of harmfulness, we deem the claim abandoned and, accordingly, decline to review it."), aff'd, 322 Conn. 636, 142 A.3d 1147 (2016).

Additionally, "[i]t is well settled that this court does not address claims raised for the first time in a reply brief." *BTS, USA, Inc.* v. *Executive Perspectives, LLC*, 166 Conn. App. 474, 498 n.7, 142 A.3d 342, cert. denied, 323 Conn. 919, 150 A.3d 1149 (2016); see also *Bovat* v. *Waterbury*, 258 Conn. 574, 585 n.11, 783 A.2d 1001 (2001) ("[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief" [internal quotation marks omitted]).

In the present case, the defendant did not address in his main brief how the allegedly improper admission of uncharged misconduct evidence harmed him. To the extent that he argues that he effectively addressed this issue by analyzing how it was an abuse of discretion for the court to admit evidence whose probative value did not outweigh its prejudicial effect, we disagree.

The defendant conflates the distinct concepts of whether the prejudicial effect of evidence outweighs its probative value and harmful error. The former concerns a trial court's consideration of whether the proffered evidence would be improper for the jury to consider, while the latter concerns a reviewing court's retrospective consideration of whether or how the allegedly improper admission of evidence corrupted the jury's verdict.

Prejudicial effect is measured in terms of whether specific evidence would arouse the jurors' emotions, distract the jury, consume an undue amount of time, or unfairly surprise the defendant. *State* v. *Hill*, supra, 307 Conn. 698. In contrast, the harm inquiry is broader in scope because it ultimately looks at the "impact of the . . . evidence on the trier of fact and the result of the trial." *State* v. *Eleck*, supra, 314 Conn. 129. Thus, harm is measured by examining a different set of considerations, "such as the importance of the [improper evidence] in the prosecution's case, whether the [improper evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [improper evidence] on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (Internal quotation marks omitted.) Id.

Accordingly, although in some cases the two concepts may overlap with one another to some extent, prejudicial effect and harm are not necessarily equivalent and must be briefed separately. *State* v. *Baker*, supra, 168 Conn. App. 35–36. Indeed, it is not inconsistent for a reviewing court to conclude that, although evidence was unduly prejudicial, and thus improperly admitted at trial, its improper admission nevertheless was harmless. See, e.g., *State* v. *Silva*, 201 Conn. 244, 250, 513 A.2d 1202 (1986) ("The trial court is required to balance the probative value against the prejudicial effect of [uncharged misconduct] evidence . . . and to exclude the evidence unless the former outweighs the latter. . . . We can find little, if any, probative value in the [uncharged misconduct evidence that was admitted in this case]. . . . Although the trial court erred in admitting [that] evidence, we think the error was harmless . . . ." [Citations omitted.]); *State* v. *Bell*, 152 Conn. App. 570, 581–82, 99 A.3d 1188 (2014) ("[T]he probative value of the uncharged misconduct testimony in this case was outweighed by its prejudicial effect. . . . We therefore conclude that the court improperly admitted [that] testimony . . . . That determination does not, however, end our discussion . . . [because] [w]e [ultimately] conclude that its admission was harmless." [Citations omitted.]); see also *State* v. *Bell*, 113 Conn. App. 25, 42, 964 A.2d 568 ("The defendant claims that [the] testimony had minimal probative value, which was outweighed by its prejudicial impact. We agree but find the admission harmless."), cert. denied, 291 Conn. 914, 969 A.2d 175 (2009).

It is only in his reply brief to this court that the defendant presents a harmful error analysis, i.e., how the allegedly improper admission of uncharged misconduct evidence substantially affected the verdict. As previously noted, we will not consider arguments raised for the first time in a reply brief. See *Bovat* v. *Waterbury*, supra, 258 Conn. 585 n.11; *BTS, USA, Inc.* v. *Executive Perspectives, LLC*, supra, 166 Conn. App. 498 n.7. Accordingly, we decline to review the defendant's claim because he has not addressed the issue of harm adequately in his main brief.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The jury found the defendant not guilty of assault in the third degree in violation of General Statutes § 53a-61 (a) (1). The jury was unable to reach a verdict on the charge of carrying a dangerous weapon in violation of General Statutes § 53-206 (a), and the court declared a mistrial on that count.

[2] Pursuant to the first notice, the state presented evidence at trial that, (1) prior to February 4, 2013, the defendant repeatedly harassed the defendant and Torres with numerous calls and text messages threatening to hurt or kill them, and (2) after the incident in question, he knocked on the window of the victim's apartment with a cane, frightening Torres.

[3] The state also argues that the court did not abuse its discretion in admitting this evidence because it was not unduly prejudicial and, furthermore, it was not harmful error for the court to admit it. Because we conclude that the defendant's claim is unreviewable, we do not address this argument.