******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES M. MCNAMARA *v.* KRISTINE MCNAMARA
(AC 43391)

Alvord, Alexander and Eveleigh, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting her attorney's motion to withdraw his appearance, denying her request for a continuance, and granting the plaintiff's motion for modification. The plaintiff filed a postjudgment motion for modification seeking amendments to the parties' parenting time, communication practices, and medical and educational final decision-making authority. Subsequently, the defendant's counsel, C, filed a motion to withdraw his appearance, in which he represented that communication with the defendant had broken down and that he could not effectively represent her interests. The trial court granted the motion after a hearing. Subsequently, the court denied the defendant's request for a continuance of the hearing on the plaintiff's motion for modification in order to obtain new counsel. The court granted the plaintiff's motion for modification, and this appeal followed. *Held*:

1. The trial court did not abuse its discretion in granting C's motion to withdraw his appearance: the court correctly determined that the defendant did not object to the motion because, after the trial court stated that it was its understanding that the defendant did not object, the defendant responded only by stating that she did not want to be self-represented, the record revealed that she was afforded ample opportunity to communicate her position, and, although C's motion was granted three days before the hearing on the motion for modification, the motion to withdraw was precipitated by the defendant's refusal to meet with C to prepare for the hearing.

2. The defendant could not prevail on her unpreserved claim that the trial court violated her right to procedural due process in denying her motion for a continuance; the defendant did not meet her burden of proving that the denial of the requested continuance of the hearing on the plaintiff's motion for modification, a postjudgment motion between two parents with joint legal and shared physical custody of their children, was a claim of constitutional magnitude, directly linked to the specific constitutional right she alleged, namely, a parent's constitutional right to make decisions concerning the care, custody and control of his or her child.

3. This court declined to review the defendant's claim that the trial court abused its discretion in denying her motion for a continuance; the defendant failed to brief and analyze adequately how she was harmed by the court's denial of her request, and, result, in the absence of any such analysis, this court was unable to conclude that the denial had any bearing on the outcome of the hearing.

4. The trial court did not abuse its discretion in awarding the plaintiff final decision-making authority on issues concerning the physical and emotional health of the parties' children, treatment decisions, and the selection of therapeutic providers: although the court found that the parties were capable and loving parents, it also found that they communicated poorly with each other and their inability to agree on important issues resulted in the children being denied therapeutic services, and, as a result, a tiebreaker was needed; this court could not conclude, on the basis of the court's findings, that the trial court abused its discretion in concluding that an award of final decision-making authority was necessary and that it was most appropriate for the plaintiff to be given that authority.

(*One judge dissenting*)

Argued April 7—officially released September 28, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other

relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Winslow, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Heidi G. Winslow*, judge trial referee, granted the motion to withdraw filed by the defendant's counsel; subsequently, the court, *Hon. Heidi G. Winslow*, judge trial referee, denied the defendant's motion for a continuance and granted the plaintiff's motion for modification, and the defendant appealed to this court. *Affirmed.*

*Olivia M. Eucalitto*, with whom, on the brief, was *Janet A. Battey*, for the appellant (defendant).

*Christopher P. Norris*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. In this postdissolution matter, the defendant, Kristine McNamara, appeals from the judgment of the trial court granting her attorney's motion to withdraw his appearance, denying her motion for a continuance, and granting the motion of the plaintiff, James M. McNamara, for modification of certain custody orders. On appeal, the defendant claims that the court (1) abused its discretion in granting her attorney's motion to withdraw, (2) violated her right to procedural due process in denying her motion for a continuance, (3) abused its discretion in denying her motion for a continuance, and (4) abused its discretion in awarding the plaintiff final decision-making authority on issues concerning the health, treatment, and therapeutic providers of the parties' children. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review of the defendant's claims. The court, *Winslow, J.*, dissolved the parties' eleven year marriage on September 27, 2013. The judgment of dissolution incorporated by reference the parties' separation agreement and parenting plan agreement (parenting plan agreement), both dated September 26, 2013. The parenting plan agreement provided, inter alia, that the plaintiff had sole legal custody of the parties' two minor children. On January 4, 2016, with the approval of the court, *Eschuk, J.*, the parties agreed to amend the parenting plan to provide that the parties would have "joint legal and physical custody of the children." On November 6, 2018, with the approval of the court, *Eschuk, J.*, the parenting plan agreement again was modified to provide the defendant with additional parenting time.

On January 11, 2019, the plaintiff filed a motion for modification. On May 15, 2019, the plaintiff filed a second amended motion for modification (operative motion for modification), in which he sought amendments to the parties' parenting time, holiday parenting time, parental communication practices, and medical and educational final decision-making authority. A hearing on the plaintiff's motion for modification was scheduled for August 8 and 9, 2019.

On July 31, 2019, the defendant's counsel, Attorney William Chabb, filed a motion to withdraw his appearance. Attorney Chabb represented that effective communication with the defendant had broken down, the defendant had stated that she did not trust him, and the defendant did not value or follow his reasonable advice or acknowledge the risks of an unfavorable result at trial. As a result, Attorney Chabb represented that he could not effectively or adequately represent the defendant's interests in the matter and that opposing counsel did not object to the granting of the motion. A hearing was set on the motion to withdraw for August

5, 2019, at which the parties appeared before the court, *Hon. Heidi G. Winslow*, judge trial referee. After the hearing, and on that same date, the court granted the motion. The defendant thereafter made an oral request for a continuance in order to obtain new counsel, which the court denied.

On August 6, 2019, the defendant filed a motion for continuance, seeking to have the hearing on the plaintiff's motion for modification continued to September 6, 2019. She asserted, as her reason for requesting a continuance: "I need more time because my lawyer withdrew yesterday. I have no legal professional representation for my hearing." The motion stated that the plaintiff had not consented to the continuance. The court, *Eschuk, J.*, denied the motion on the same day it was filed.

The plaintiff's operative motion for modification was heard by the court, *Hon. Heidi G. Winslow*, judge trial referee, on August 8 and 9, 2019. On August 9, 2019, the court made findings on the record and, on August 12, 2019, the court issued a written order, providing, inter alia, that: "The parties shall have joint legal custody of the minor children. The parties shall be equally involved in all major decisions affecting the children. The party with whom the children are staying at the time will have the right to make emergency decisions affecting the children. All other important decisions affecting the health, welfare, education, religious upbringing, guidance, discipline or other aspect of the upbringing of the children shall be made with the participation, involvement and agreement of both parents. Neither party shall be entitled to act unilaterally as to important decisions affecting the children until there has been a bona fide attempt to reach agreement. If, however, the parties are unable to agree on a physical health, emotional health, or therapeutic treatment decision or selection of the providers of such services, the plaintiff shall have the final say. Physical and emotional health care appointments, as well as therapeutic services, shall be scheduled to occur on some of the parenting time of each parent." On August 26, 2019, the defendant filed a motion to reargue the court's August 12, 2019 custody orders, which was denied. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim on appeal is that the court abused its discretion in granting Attorney Chabb's motion to withdraw his appearance. Specifically, she argues that it was improper to permit Attorney Chabb to withdraw seventy-two hours before the hearing on the plaintiff's motion for modification was scheduled to begin and that the court's determination that she did not object to Attorney Chabb's withdrawal is contradicted by the transcript. The plaintiff responds that the defendant was clear as to her desire to hire new counsel

and she did not object to Attorney Chabb's withdrawal. We conclude that the court did not abuse its discretion in granting the motion to withdraw.

The following additional facts and procedural history are relevant to our resolution of this claim. At the beginning of the August 5, 2019 hearing on Attorney Chabb's motion to withdraw his appearance, the court recessed briefly to give the defendant and Attorney Chabb time to speak with each other. The court then heard argument from Attorney Chabb before turning to the defendant for her position on the motion. The defendant explained: "I feel that [Attorney] Chabb is not informing me and protecting my legal rights by guiding me in the direction that I need to be guided in." The defendant stated that Attorney Chabb had e-mailed her on May 29, 2019, to inform her that she could ask for a deposition of the plaintiff if she wanted to do so. She explained that he had sent her a letter on August 1, 2019, in which he indicated that he had e-mailed her regarding the "use and necessity of a deposition." The defendant stated that Attorney Chabb had falsely said that she was under stress and pressure and that she had virtually no contact with him during July, 2019. She represented that "[I]t's been all along where I've gone to court and he hasn't reviewed to me what is actually coming up onto to be discussed. And I go into court and, [for] example, the November 6, whatever happened that day, it was the day before that I saw that the opposing side wanted to change something in the parenting plan. But I had met with [Attorney] Chabb the day before and we discussed an entirely different motion. So, I walked into court the next day and I was basically blindsided by a proposal handed to the judge that I didn't even read." The defendant further represented that, on another occasion, Attorney Chabb again had not informed her of the subject matter of an upcoming hearing.

The defendant then explained to the court that she was very busy because of her parenting time with the parties' children. She stated that she had not filed any objection to the plaintiff's request for medical and educational decision-making authority because she had not been told that she was supposed to be filing an objection. She concluded her argument by stating: "[U]nfortunately I can't seem to, for whatever reason, the relationship is—I can't seem to get good counsel. And I'm just looking for a fair and honest . . . process with good legal counsel so that I can put on a case to show the court the good, dedicated mother that I am. Thank you, Your Honor."

After sharing her position, the court followed up by asking the defendant how she responded to Attorney Chabb's May 29, 2019 e-mail regarding the deposition, and whether she let Attorney Chabb know whether she wanted to have the plaintiff deposed. After this line of inquiry, the court stated: "[W]ell, what I think I'm hear-

ing from you is that you're agreeing that your relationship with [Attorney] Chabb has broken down." The defendant responded: "I—you know, I spent $30,000 and I—if there's some way that we can work it out. My problem is that if I go to try and get another lawyer, you know—I've called and sort of inquired, you know, it would be a $30,000 retainer. So I, you know, I've tried to—to—." The court then interjected: "And really short notice since your hearing is later this week."

The court then inquired of the defendant regarding her willingness to share with Attorney Chabb certain e-mails. The defendant stated: "[I]f [the plaintiff's] entire motion is gonna be heard on the 8th and 9th, he has not asked, sat down with me, and asked me for any e-mails to discuss anything. And so he's telling me now, the other day, that in three to four hours he can prepare me for this hearing but he's spent no time and he's asked for no e-mails of what it is that could support my case against these false allegations that the other side is making." The court and the defendant then engaged in a colloquy regarding whether the defendant should have provided certain e-mails to Attorney Chabb, with the defendant explaining, inter alia, that she wanted to sit down with Attorney Chabb and go through each of the plaintiff's allegations and discuss what types of e-mails would be most responsive to the plaintiff's allegations.

The following colloquy then occurred:

"The Court: I see why [Attorney] Chabb is asking to be released and you're not objecting to his being released.

"[The Defendant]: Well—

"The Court: You get the e-mails together that you need and come and put on your hearing on Thursday. I mean, you either have [Attorney] Chabb representing you Thursday and Friday or you don't.

"[The Defendant]: But I don't want to be—

"The Court: And it sounds as though your relationship has broken down and that you haven't given him the documents that you feel are necessary for—for the motion to be heard. You know—

"[The Defendant]: But I don't want—

"The Court: —I don't know what you expect him to do when he hasn't been given anything from you.

"[The Defendant]: But I don't want—I don't want to represent myself. I would like some time to find counsel that I can find counsel that can help me.

"The Court: This case has been scheduled for three months, two and a half, at this point.

"[The Defendant]: And—and—

"The Court: And, you know, at this point you're either

ready to proceed with [Attorney] Chabb or you're not."

The defendant then stated that she and Attorney Chabb had not had any contact for the month of July, 2019. Attorney Chabb responded: "For the record . . . [the defendant] is right. I had not contacted her for three weeks. Largely because my policy is to wait for preparation as close to a hearing as possible in order, number one, to save money, number two, i[n] case there's amended motions or anything else that comes along. However, prior to May 29th and that e-mail about the deposition as I forwarded per [the defendant's] instructions, formal objections drafted to the allegations made by [the plaintiff's counsel] in the normal course. I also drafted motions for modifications per [the defendant's] directions. I sent them to her, I looked for her direction as to actually filing them. [The defendant] stated to me that she had answers to all the allegations for [the plaintiff's counsel's] motion and I never received them. So, there comes a point where I can't obviously command, I can only try to persuade my clients. And I tried to persuade her to deal with these issues and deal with them in a timely fashion, I heard nothing. So, at one point, you just have to stop. I've done everything she directed me to do, she's been successful in terms of her parenting and an additional time in November, the last time we were in court. So, the problem becomes is . . . not that I take [the defendant's] criticisms personally, I don't, but professional[ly] I have to decide whether I can actually work with her when her attitude is somewhat in opposition depending on the day. So when she called me last week and asked me about preparation I did say, and I invited her to come to my office last Wednesday or Thursday to sit down, I have a complete file, I have what I believe would be some objections, might have merit, but she proceeded to simply not take me up on my offer and kind of personally harangue me. Again, it's not personal but professionally how can I recover from that? So, how can I sit down now with [the defendant] and pretend it all didn't happen and now deal with all the documents she's had, no deposition and it is her option, it's always the client's options, as to whether they want to spend any money on any legal procedures. So unfortunately, I don't believe that I can represent [the defendant]. I think too much water under the bridge in this relationship.

"The Court: I'll hear from you again, Ms. McNamara. [Attorney] Chabb has said that you were invited to his office last week. Do you recall something of that sort?

"[The Defendant]: Over the phone he told me that on Thursday and Friday that the only things are gonna be discussed are [the plaintiff's] issue wanting sole medical and educational decision making.

"The Court: Did he invite you to his office—

"[The Defendant]: He—

"The Court:—to sit down and talk?

"[The Defendant]: He did. He—

"The Court: And—and—

"[The Defendant]:—over the phone he—Yeah.

"The Court: And what was your response to that?

"[The Defendant]: That . . . last minute to go there and sit down and talk to him when he never even told me what type of e-mails or anything that I would prepare. He said I can see you either tomorrow or the next day and I'll prepare you in three to four hours. But I said, I don't want you to prepare me when . . . you haven't even told me what to bring or we haven't even discussed. How can, it's not that I don't want him to, it's that how could we possibly prepare effectively in three to four hours for just sole medical and educational decision making as if those are just the only issues when we have had no contact and we've not sat down for him to guide me on what it is that I could bring that would be most worthy for a hearing.

"The Court: So you declined to sit down with him?

"[The Defendant]: I said to him how can we prepare, you know, in three to four hours and that be it when we haven't—

"The Court: So, did you decline to sit down with him last week?

"[The Defendant]: Ah—no. I would like—I'm still willing to sit down and prepare effectively.

"The Court: So why did you not go when he suggested that you go and sit down with him last week?

"[The Defendant]: Well, I was—I was with my kids that day so I couldn't go that day. And it wasn't kind of like, I couldn't go that day. . . . It was so last minute. It wasn't even something that was scheduled in advance, like this is when we're gonna sit down. There was no, it wasn't even that there was an appointment scheduled to say, okay, in two weeks I want, since we've had this discussion, we're gonna have another sit down where we're gonna discuss in three to four hours everything that I told you to bring. So then we're gonna sit down at this time . . . and really go prepare properly with what I've asked you to bring. It's almost like there's nothing and then . . . we had a conversation and he said come and in three to four hours, tomorrow or the next day, I'm gonna prepare you with nothing. And we—I mean, pretty much the whole month of . . . July, we—there's been no contact. There's been no professional guidance and I just feel that that's detrimental to my interests for . . . having a fair trial, a fair hearing for medical and educational decision making when I'm the one that—that makes very good decisions

medically and educationally for my children. So, I'm going—If I don't have good counsel helping me advance my interests to me that's, I don't—

"The Court: Well, it seems to me that there's a definite rift between [the defendant] and [Attorney] Chabb. Ms. McNamara, I don't really understand your reasoning that says I needed to sit down with him but I couldn't make myself available on either of the days that he suggested last week for several hours. And it doesn't make sense to me and I think that [Attorney] Chabb has the same difficulty with a hearing coming up shortly for you to not make yourself available to sit down with him is a problem. So, I'm going to grant his motion releasing him from further representation in this matter. You just made it very clear that you have no confidence in his ability to represent you.

"[The Defendant]: I don't want to be self-represented though."

We first set forth our standard of review. "Decisions regarding the withdrawal of counsel are evaluated under an abuse of discretion standard." *Tolman* v. *Banach*, 82 Conn. App. 263, 265, 843 A.2d 650 (2004); see also *State* v. *Fernandez*, 254 Conn. 637, 647, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001).

The defendant first contends that the court incorrectly concluded that she did not object to Attorney Chabb's motion to withdraw. Our review of the transcript reveals that the court asked the defendant whether she wanted to be heard on Attorney Chabb's motion to withdraw. The defendant responded in detail by chronicling the ways in which she perceived her counsel to have failed to inform her, to protect her rights, and to guide her. Specifically, she stated that he had failed to inform her of the substance of prior court hearings, miscommunicated with her as to the importance of a deposition, and said false things about her stress level. She did not include in her remarks any statement that she objected to the motion or that she wanted Attorney Chabb to continue to represent her. At the conclusion of the defendant's remarks, the court followed up with questions for the defendant. Following that colloquy, the court stated that it was its understanding that the defendant was not objecting to her counsel being permitted to withdraw, to which the defendant responded that she did not want to be self-represented. It was not until the discussion turned to whether the defendant had failed to accept her counsel's invitation to meet to prepare for the upcoming hearing that the defendant stated that she was still willing to meet with Attorney Chabb. Moreover, after the court stated that it was granting Attorney Chabb's motion, the defendant responded only by stating that she did not want to be self-represented. On the basis of this record, we conclude that the court did not incorrectly determine

that the defendant did not object to Attorney Chabb's motion to withdraw.

Although the defendant points to instances in which she contends the court "cut her off" when she tried to clarify whether she was objecting to Attorney Chabb's motion to withdraw, the record reveals that she was afforded ample opportunity to communicate her position on the motion. The colloquies cited by the defendant as evidencing the court's "cut[ting] her off" occurred after both the defendant's full opportunity to state her position and the additional colloquy between the court and the defendant, in which the defendant provided indirect responses to the court's question as to why she had declined to meet with her counsel.

The defendant's second argument is that the time frame of the court's granting of her counsel's motion to withdraw, seventy-two hours before the hearing on the plaintiff's motion for modification was scheduled to begin, further reflects an abuse of discretion. Although Attorney Chabb's motion to withdraw was granted three days before the hearing on the motion for modification, the motion to withdraw, which had been filed on July 31, 2019, was precipitated, at least in part, by the defendant's refusal to accept Attorney Chabb's invitation that they meet to prepare for the hearing. Moreover, the defendant, prior to the hearing on Attorney Chabb's motion to withdraw, had consulted with another attorney and was told she would have to provide a $30,000 retainer. Accordingly, we conclude that the court did not abuse its discretion in granting Attorney Chabb's motion to withdraw his appearance.

## II

The defendant's second claim on appeal is that the court violated her right to procedural due process when it denied her motion for a continuance. We disagree.

The following additional procedural history is relevant to this claim. After the court orally granted Attorney Chabb's motion to withdraw his appearance, the defendant requested that the hearing on the plaintiff's motion for modification be continued to allow her time to find new counsel. The following colloquy occurred:

"[The Defendant]: I don't want to be self-represented though. I'd like a month then to—

"The Court: That's your option.

"[The Defendant]:—find counsel.

"The Court: You may go and seek counsel or you may come up and represent yourself in two—three days, I guess it is.

"[The Defendant]: So I—

"The Court: See you on the eighth.

"[Attorney Chabb]: Thank[s], Your Honor.

"[The Defendant]: So I need to find, so I need to find counsel for the case—

"The Court: Or represent yourself, whichever.

"[The Defendant]:—on Friday or—for that. So, it can't be—it can't be—

"The Court: It's the eighth, not Friday.

"[The Defendant]: So it can't be continued so I can find legal counsel?

"The Court: No. This matter's been pending since May.

"[The Defendant]: Okay.

"The Court: You will show up and have your hearing on Thursday and Friday.

"[The Defendant]: Thank you."

The following day, August 6, 2019, the defendant filed a motion for a continuance, in which she represented: "I need more time because my lawyer withdrew yesterday. I have no legal professional representation for my hearing." She requested that the hearing be continued to September 6, 2019. The defendant indicated on the motion that the plaintiff did not consent to the request for continuance. The court, *Eschuk*, *J.*, denied the motion.

On appeal, the defendant argues that the court's denial of her motion for a continuance deprived her of due process, and she seeks review of her claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), because her claim was not presented to the trial court as constitutional in nature. Assuming the first prong of *Golding* is met, we turn to whether, under the facts of this case, the defendant has met her burden of proving that the denial of the requested continuance is a claim of constitutional magnitude. See, e.g., *Foster* v. *Foster*, 84 Conn. App. 311, 316–17, 853 A.2d 588 (2004). "In general, a claim that a court improperly denied a motion for a continuance is not a constitutional claim, but rather one that rests in the discretion of the trial court. . . . If the denial of the continuance is directly linked, however, to a constitutional right, then due process rights are implicated, and the claim is of constitutional magnitude." (Citation omitted.) Id., 317.

We are not persuaded that the defendant has satisfied her burden of demonstrating that the denial of the requested continuance is directly linked to the specific constitutional right she alleges, namely, a parent's constitutional right to make decisions concerning the care, custody and control of his or her child. The defendant relies on *In re Shaquanna M.*, 61 Conn. App. 592, 767 A.2d 155 (2001), and *Foster* v. *Foster*, supra, 84 Conn.

App. 311, both of which are distinguishable from the present case.

*In re Shaquanna M.*, supra, 61 Conn. App. 605–608, involved a denial of a continuance in a proceeding to terminate parental rights. This court determined that the respondent's due process rights were violated when the court denied her a continuance to obtain new counsel for her children after the individual who had been serving as their attorney and guardian ad litem had died. Id., 593–94, 608. Because the proceeding to terminate parental rights implicated the respondent's constitutional right to maintain a relationship with her children, this court reviewed the trial court's denial of the continuance pursuant to a procedural due process standard, rather than the general abuse of discretion standard. Id., 604–605. *Foster* v. *Foster*, supra, 84 Conn. App. 313–14, involved motions filed by the paternal grandparents to modify custody or, in the alternative, to enforce their visitation rights. On appeal, the plaintiff claimed that the court violated her right to procedural due process when it denied her motion for a continuance. Id., 315. This court determined that, "because the hearing involved a request by grandparents for visitation, the plaintiff's motion for a continuance was sufficiently linked to a constitutional right to accord *Golding* review to the court's denial of her motion for a continuance." Id., 318. This court, citing *Roth* v. *Weston*, 259 Conn. 202, 229, 789 A.2d 431 (2002), stated that our Supreme Court has held that a motion by a grandparent or a third party for visitation affects a parent's fundamental right to make decisions regarding her child's care, control, education, health, religion, and association. *Foster* v. *Foster*, supra, 317–18.

The present case does not involve the irrevocable severance of a parent's rights; see, e.g., *In re Shaquanna M.*, supra, 61 Conn. App. 605; or the "forced intervention by a third party seeking visitation . . . ." (Internal quotation marks omitted.) *Foster* v. *Foster*, supra, 84 Conn. App. 318. Rather, the motion filed by the plaintiff sought modifications both to parenting time and holiday parenting time, modifications to the method and frequency of communications between the parents, and an order that the plaintiff be awarded final decision-making authority with respect to the medical, dental, orthodontic, and educational needs of the parties' children. The defendant has provided this court with no authority that the denial of her requested continuance of the postjudgment hearing between two parents who have joint legal and shared physical custody of their children, is directly linked to her constitutionally protected interest in the care, custody, and control of her children.

Consequently, we conclude that the defendant has failed to satisfy the second prong of *Golding*, in that she has not met her burden of proving that the denial of the requested continuance is a claim of constitutional

magnitude.

### III

The defendant's third claim on appeal is that the court abused its discretion in denying her motion for a continuance. We decline to review this claim.

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . [I]f the reasons given for the continuance do not support any interference with [a] specific constitutional right, the [reviewing] court's analysis will revolve around whether the trial court abused its discretion. . . .

"Decisions to grant or to deny continuances are very often matters involving judicial economy, docket management or courtroom proceedings and, therefore, are particularly within the province of a trial court. . . . Whether to grant or to deny such motions clearly involves discretion, and a reviewing court should not disturb those decisions, unless there has been an abuse of that discretion, absent a showing that a specific constitutional right would be infringed. . . .

"Our Supreme Court has articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . ." (Citations omitted; internal quotation marks omitted.) *Watrous* v. *Watrous*, 108 Conn. App. 813, 827–28, 949 A.2d 557 (2008); see also, e.g., *State* v. *Rivera*, 268 Conn. 351, 379, 844 A.2d 191 (2004).

"In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis." (Internal quotation marks omitted.) *Boccanfuso* v. *Daghoghi*, 193 Conn. App. 137, 169, 219 A.3d 400 (2019), aff'd, 337 Conn. 228, 253 A.3d 1 (2020); see also *Mensah* v. *Mensah*, 167 Conn. App. 219, 223, 143 A.3d 622, cert. denied, 323 Conn. 923, 150 A.3d 1151 (2016). "[I]n order to establish reversible

error in nonconstitutional claims, the [appellant] must prove both an abuse of discretion and harm . . . ." (Internal quotation marks omitted.) *Cunniffe* v. *Cunniffe*, 141 Conn. App. 227, 235, 60 A.3d 1051, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013); see also *State* v. *Coney*, 266 Conn. 787, 803, 835 A.2d 977 (2003) (declining to decide whether court's denial of request for continuance was improper when defendant failed to sufficiently demonstrate harm flowing from denial); *Boccanfuso* v. *Daghoghi*, supra, 170 (concluding that, even if court abused its discretion in refusing to grant continuance in order to present witness' testimony, appellant failed to demonstrate harm as consequence of denial of motion).

In the present case, the defendant failed to brief adequately how she was harmed by the court's denial of her request for a continuance. Notably, her appellate brief does not recognize or discuss her burden in this regard. As a result of the defendant's failure to brief the issue of harm, the plaintiff did not have the opportunity in his appellate brief to respond to any harm analysis. "Our practice requires an appellant to raise claims of error in his original brief . . . so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that [the appellate court] can have the full benefit of that written argument." (Internal quotation marks omitted.) *State* v. *Jose G.*, 290 Conn. 331, 341 n.8, 963 A.2d 42 (2009); see, e.g., *Scalora* v. *Scalora*, 189 Conn. App. 703, 722 n.20, 209 A.3d 1 (2019); see also, e.g., *State* v. *Toro*, 172 Conn. App. 810, 815, 162 A.3d 63 (declining to review claim when appellant presented harmful error analysis for first time in reply brief), cert. denied, 327 Conn. 905, 170 A.3d 2 (2017).[1] In the absence of any analysis concerning how the defendant was harmed by the denial of the continuance, we are unable to conclude that the denial had any bearing on the outcome of the hearing.

It is well established that "[w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *State* v. *Holmes*, 176 Conn. App. 156, 185, 169 A.3d 264 (2017), aff'd, 334 Conn. 202, 221 A.3d 407 (2019). In the context of the failure of a party adequately to brief how a challenged evidentiary ruling was harmful, this court, on multiple occasions, has declined to review a claim of error related to such ruling. See, e.g., *State* v. *Lyons*, 203 Conn. App. 551, 569, 248 A.3d 727 (2021) (declining to consider whether court's admission of challenged testimony was abuse of its discretion when appellant failed to brief how it was harmed by court's evidentiary ruling); *State* v. *Toro*, supra, 172 Conn. App. 818 (declin-

ing to address claim when defendant failed to address issue of harm adequately in principal brief). As with an evidentiary claim, the claim of the defendant in the present case is nonconstitutional in nature, and, therefore, the defendant bears the burden of demonstrating both an abuse of the trial court's discretion and resulting harm. See, e.g., *Cunniffe* v. *Cunniffe*, supra, 141 Conn. App. 235. In light of the defendant's failure to brief and analyze how she was harmed by the court's denial of her request for a continuance, we, accordingly, decline to consider whether the court's ruling was an abuse of discretion.[2]

IV

The defendant's final claim on appeal is that the court abused its discretion in modifying custody orders. Specifically, the defendant claims that the court erred in awarding the plaintiff final decision-making authority. We disagree.

The following additional facts and procedural history are relevant to the defendant's claim. In the plaintiff's May 16, 2019 motion, the plaintiff sought amendments to the parties' parenting time, holiday parenting time, parental communication practices, and medical and educational final decision-making authority. Regarding final decision-making authority, the plaintiff represented that "[t]he parties' minor children have specific and significant educational and medical needs and the defendant has wilfully failed and refused to provide her consent for the plaintiff to pursue various medical and/or educational needs of the minor children, which have been recommended by health care and educational providers and experts." He alleged that the defendant's refusal to provide consent to the plaintiff to pursue the recommendations of health care and educational providers was "contrary to the well-being of the minor children."

The plaintiff further represented that the defendant had "made unilateral health care and/or educational decisions regarding the minor children and [had] withheld pertinent information from the plaintiff, which is contrary to the parties' joint legal and physical custody and the minor children's best interests." The plaintiff acknowledged that it was in the children's best interests that "the parties continue to have joint legal and physical custody . . . ." He maintained, however, that on the basis of the defendant's unilateral decision making, withholding of information from the plaintiff, and unreasonably withholding of consent for the plaintiff to pursue recommendations of health care and education providers, he should be granted "sole, exclusive, final decision-making abilities with respect to the medical, dental, orthodontic, and educational needs of the minor children . . . ."

The court held a two day hearing on the plaintiff's

motion on August 8 and 9, 2019. Both parties testified along with Cynthia Twiss, the interim director of special services for public schools in Easton and Redding, and the court heard closing remarks. At the conclusion of the hearing, the court made findings on the record. The court first found that "both parents are capable and loving parents of their children" and stated that it had no concerns about the well-being of the children when they are with either parent. The court found that the parties communicate poorly with each other. Specifically, it found that the plaintiff "tends to put forward comprehensive scheduling plans for the future and [the defendant], for whatever reason, seems reluctant to commit in writing, by e-mail or text, to specific plans and this creates problems with scheduling and timing. So, she has not always made timely responses to requests that have been made by [the plaintiff], and that has to do with a number of issues, schedules, activities, summer plans, therapist suggestions."

The court found: "It's not really a question of whether the parties have good things to contribute, because I think both do as far as the—what's best for the boys. Both parties spend a lot of time with the boys. Both parties are very acutely aware of their needs. There are . . . two good heads to bring to bear here with regard to parenting decisions. Both are attuned to the boys' needs. Both have valid proposals to make and good ideas as to what might be best for the boys. So, that kind of joint communication is going to have to be improved, but it is important that both parties have input into the decision making with regard to what is best for the boys, as—particularly with regard to such areas as medical care, therapeutic care and education.

"Nevertheless, at this point services are being denied to the boys because of the inability of the parties to reach mutual agreement on important issues. They have already had disagreements with regard to the choice of medical doctor for the boys. They've already had disagreements regarding what and when a therapist should be applied for in-home services. There are disagreements looming at this point with regard to schooling for the boys and there's already been disagreement with regard to the educational plan the school put forward for [the parties' younger child] in particular . . . requiring that there actually be a formal hearing at which the questions arose whether . . . the school plan should be followed or not. The parties disagreed with regard to that issue. There's been a . . . more recent disagreement regarding the extended school year that [the parties' older child] had. A disagreement in 2018, again in 2019, resolved only by basically its being implemented by [the plaintiff] over the lukewarm, perhaps, but otherwise objection of [the defendant].

"So, these are all very important issues that cannot remain in limbo going into the future. Somehow, there

has to be a . . . tiebreaker and a way to resolve it, and I recognize that. I am compelled to follow the best interests of the children as I apply those to the facts that have been presented, applying the statutory criteria, of course. But, I do find that the best interests of the boys do require some changes at this point because of the fact that there are some serious problems with getting decisions made and I will be making some changes.''

On August 12, 2019, the court issued its order on the plaintiff's motion for modification. With respect to custody, the court issued the following order: "The parties shall have joint legal custody of the minor children. The parties shall be equally involved in all major decisions affecting the children. The party with whom the children are staying at the time will have the right to make emergency decisions affecting the children. All other important decisions affecting the health, welfare, education, religious upbringing, guidance, discipline or other aspect of the upbringing of the children shall be made with the participation, involvement and agreement of both parents. Neither party shall be entitled to act unilaterally as to important decisions affecting the children until there has been a bona fide attempt to reach agreement. If, however, the parties are unable to agree on a physical health, emotional health, or therapeutic treatment decision or selection of the providers of such services, the plaintiff shall have the final say. Physical and emotional health care appointments, as well as therapeutic services, shall be scheduled to occur on some of the parenting time of each parent.''

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . [I]n a dissolution proceeding the trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion. . . . [T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.'' (Internal quotation marks omitted.) *Baker-Grenier* v. *Grenier*, 147 Conn. App. 516, 519, 83 A.3d 698 (2014).

The defendant's sole contention with respect to the custody orders is that the court's favorable findings as to the defendant's decision-making abilities are incon-

sistent with the court's order providing the plaintiff with final decision-making authority with respect to the children's physical health, emotional health, or therapeutic treatment decisions or selection of the providers of such services. We disagree with the defendant.

The defendant emphasizes the court's findings that she is "very acutely aware" of the children's needs, that she has a "good [head] to bring to bear . . . with regard to parenting decisions," and that she has "valid proposals to make and good ideas as to what might be best for the boys." The court made these findings applicable to both parents.

Significantly, the court expressly found that, although the parties were both capable and loving parents, they communicated poorly with each other and their inability to agree on important issues resulted in the children being denied therapeutic services. Specifically, the court heard evidence that the children had not received in-home therapy for approximately one year due to the parties' inability to agree on a provider. The court additionally referenced disagreements with respect to the children's pediatrician. The court heard evidence that the defendant unilaterally terminated the children's relationship with their pediatrician. Further, the court referenced the defendant's disagreement with the school's educational plan for the parties' younger child, and her objection to the continued participation of the parties' older child in an extended school year program. The court found that there were "serious problems with getting decisions made" and that a "tiebreaker" was needed. On the basis of these findings, we cannot conclude that the court abused its discretion in determining that an award of final decision-making authority was necessary and that it was most appropriate that the plaintiff be given final decision-making authority.[3]

The judgment is affirmed.

In this opinion ALEXANDER, J., concurred.

[1] The defendant did not file a reply brief.

[2] Although we decline to respond to the dissent on a point by point basis, we are compelled to note the following. The dissent, despite acknowledging that the defendant has the burden of demonstrating harm, fails to identify any meaningful analysis of harm contained in the defendant's appellate brief. Instead, it points to the defendant's "statement of facts" section of her brief, in which she states that she was not familiar with the rules of evidence, and that she did not enter any exhibits into evidence or call any witnesses other than herself to testify during her case-in-chief. The only other reference that the dissent identifies in the defendant's appellate brief as demonstrating an analysis of harm is the defendant's statement in the "conclusion and statement of relief requested" portion of her brief, in which she stated that she "stood to lose the ability to make important medical and educational decisions" for her children if the court granted the plaintiff's motion.

In the absence of any briefing or analysis of harm, the dissent identifies three ways in which the defendant may have been harmed by the court's ruling. First, the dissent goes beyond the defendant's recitation of the facts that she did not introduce any exhibits or call any additional witnesses, to add that she also did not raise any objections. Second, the dissent states that "given that the trial judge questioned the defendant extensively during the hearing, an attorney surely would have raised an objection on her behalf." The defendant does not make this argument in her brief. Third, the dissent

states that harm is demonstrated by the fact that the court granted the plaintiff's motion for modification. It is unclear how the dissent, in the absence of any analysis regarding harm, could conclude that the denial of the continuance had any bearing on the outcome of the plaintiff's motion. See, e.g., *State* v. *Coyne*, 118 Conn. App. 818, 824, 985 A.2d 1091 (2010) ("[a]bsent any analysis regarding harm, we cannot conclude that the admission of the subject evidence had any bearing on the trial's outcome"). In sum, we do not agree with the dissent's approach of deciding the case on the basis of speculative arguments that the defendant never made.

[3] The defendant maintains that "[t]o allow the plaintiff to ultimately make the final decisions concerning the children is, in effect, sole custody . . . ." We conclude that this argument lacks merit. As this court has previously held, "[f]inal [decision-making] authority in one parent is distinct from sole legal custody." *Lopes* v. *Ferrari*, 188 Conn. App. 387, 397, 204 A.3d 1254 (2019); see also *Desai* v. *Desai*, 119 Conn. App. 224, 230, 987 A.2d 362 (2010) (rejecting argument that grant of ultimate decision-making authority to one parent is in effect order of sole custody).